UNITED STATES of America, Appellee,

v.

Loren Robie WILSON, Appellant.

No. 80–1066.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1980.

Decided Dec. 31, 1980.

---

**1162**

Daniel J. Matula, Kansas City, Mo., for appellant.

Ronald S. Reed, Jr., U. S Atty., Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before LAY, Chief Judge, and BRIGHT and McMILLIAN, Circuit Judges.

BRIGHT, Circuit Judge.

Loren Robie Wilson appeals from his conviction after a jury trial on charges of possession of an unregistered sawed-off shotgun, 26 U.S.C. § 5861(d) (1976), and possession of firearms by a felon, 18 U.S.C. App. § 1202(a)(1) (1976). Wilson contends that the district court improperly admitted into evidence the firearms discovered in the trunk of his car during an inventory search. We agree with appellant and, therefore, reverse.

## I. Background.

On August 26, 1979, Officer Stephen Burge of the Grandview, Missouri, Police Department, observed defendant Wilson driving erratically and in excess of the speed limit. Burge stopped defendant's car and placed Wilson under arrest for various traffic infractions. Burge decided to take the defendant to the Grandview police station so that Wilson, a nonresident, could post an appearance bond. The police officer testified that after observing Wilson's driving, he believed the defendant to be incapable of driving himself to the police station. As a result, Burge decided to order a tow truck to take Wilson's car off the street. Before the car was towed, Burge, with the assistance of Officer George Forte, conducted a routine inventory search of the interior and trunk of Wilson's car. During the search, Forte found under the front seat a sock containing shotgun shells and in the trunk two pistols, a sawed-off shotgun, two nylon stocking masks, two pairs of overalls, three pairs of work gloves, and one pair of bolt cutters.

In a pretrial proceeding, Wilson moved to suppress the evidence discovered during the inventory search of his car. The district court denied this motion, holding that the inventory search was not unreasonable under the fourth amendment. The court found that the governmental interests advanced by the inventory search outweighed the defendant's privacy interest in his automobile trunk. Wilson appeals, asserting that under the circumstances of this case, the inventory search of the trunk was unreasonable within the meaning of the fourth amendment.

## II. Validity of Inventory Search.

The Supreme Court has recognized the constitutionality of routine inventory searches conducted without a warrant.[1]

---

1. The Supreme Court has reasoned that the policies underlying the warrant requirement do not apply to inventory searches. Securing a warrant requires the police to obtain a neutral determination of probable cause. Because the police do not need probable cause to conduct a routine inventory search, a warrant proceeding is irrelevant to this type of search. *See South Dakota v. Opperman*, 428 U.S. 364, 370 n.5, 96 S.Ct. 3092, 3097 n.5, 49 L.Ed.2d 1000 (1976);

*United States v. Chadwick,* 433 U.S. 1, 10 n.5, 97 S.Ct. 2476, 2482 n.5, 53 L.Ed.2d 538 (1977); *South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976). *See also United States v. Bloomfield,* 594 F.2d 1200, 1201 (8th Cir. 1979). The fourth amendment, however, is not irrelevant to this type of search. A court must determine whether the inventory search is reasonable within the meaning of the fourth amendment in light of the facts and circumstances of the particular case. *See South Dakota v. Opperman, supra,* 428 U.S. at 375, 96 S.Ct. at 3100; *Cooper v. California,* 386 U.S. 58, 59, 87 S.Ct. 788, 789, 17 L.Ed.2d 730 (1967); *United States v. Lawson,* 487 F.2d 468, 473 (8th Cir. 1973). To be reasonable, both the initial seizure and subsequent search must be legitimate.

In this case, Officer Burge observed Wilson driving erratically, speeding, and improperly exiting from the highway. Burge could reasonably conclude, therefore, that Wilson was incapable of safely driving his car to the police station. Even though after talking to Wilson Burge realized that Wilson was not intoxicated, Burge could justifiably hold to his original decision to have the car towed.

 A legitimate seizure, however, does not automatically justify an unlimited search of the automobile. The fourth amendment requires that an inventory search be reasonable in scope. *See South Dakota v. Opperman, supra,* 428 U.S. at 376 n.10, 96 S.Ct. at 3100 n.10;[2] *id.* at 380, 96 S.Ct. at 3102 (Powell, J., concurring); *United States v. Edwards,* 577 F.2d 883, 893 (5th Cir.) *(en banc), cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). *See also Terry v. Ohio,* 392 U.S. 1, 18–19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). To determine whether the search of Wilson's car trunk was excessive, this court must weigh the governmental interests advanced by an inventory search against the privacy inter-

ests invaded in light of the particular circumstances of the case.

Three governmental interests have been advanced to justify an inventory search: (1) "the protection of the owner's property while it remains in police custody"; (2) "the protection of the police against claims or disputes over lost or stolen property"; and (3) "the protection of the police from potential danger." *South Dakota v. Opperman, supra,* 428 U.S. at 369, 96 S.Ct. at 3097. [*United States v. Bloomfield, supra,* 594 F.2d at 1202 (footnote omitted).]

The district court found that the inventory search of Wilson's car advanced the first two interests. The court believed that the threat of disputes over property was especially high because the car was being taken to a private storage yard not within police control. Weighing these interests against the privacy interests of the individual, the district court held that because an individual possesses a diminished expectation of privacy in his automobile, the governmental interest outweighed Wilson's and, therefore, the search was valid. We do not agree. We believe that the search was unreasonable in light of the individual's greater expectation of privacy in the locked trunk of his automobile and in view of the particular facts of this case.

The rationale for the diminished expectation of privacy in automobiles is based in part on the public nature of automobile travel. As the Supreme Court explained,

A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view. [*Cardwell v. Lewis,* 417 U.S. 583, 590, [94 S.Ct. 2464, 2469, 41 L.Ed.2d 325] (1974) (plurality opinion).]

*Accord, South Dakota v. Opperman, supra,* 428 U.S. at 368, 96 S.Ct. at 3096. In their ordinary contact with motorists, the police

---

*United States v. Bloomfield,* 594 F.2d 1200, 1202 (8th Cir. 1979).

**2.** In *Opperman,* the Court specifically held that "[t]he inventory was not unreasonable in

scope," 428 U.S. at 376 n.10, 96 S.Ct. at 3100 n.10, thus recognizing that the fourth amendment limits the scope of inventory searches.

commonly view the interior of the automobile so that at least visual intrusions must be expected. The search approved in *Opperman*, for example, resulted from the fact that the owner's valuables came within the plain view of the police. 428 U.S. at 375–76, 96 S.Ct. at 3100. A locked trunk, however, is not subject to this level·of visual intrusion.

In *United States v. Chadwick, supra,* the Court distinguished, in part, searches of luggage from those of an automobile because the contents of the luggage were not exposed to public view; thus, police must secure a warrant before searching a locked footlocker, even though the locker itself was seized in public. 433 U.S. at 13, 97 S.Ct. at 2484. Like the footlocker in *Chadwick*, Wilson's car trunk was locked and its contents were not exposed to outside viewing. Further, an automobile trunk will be more likely to hold personal effects than other compartments of the car and, therefore, the greater privacy interest that the Court has recognized in personal luggage should attach. *See United States v. Chadwick, supra,* 433 U.S. at 13, 97 S.Ct. at 2484; *Arkansas v. Sanders*, 442 U.S. 753, 762, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235 (1979). As Professor LaFave has written:

> The Court in *Chadwick* declared that a person's expectation of privacy in personal luggage is substantial as "luggage is intended as a repository of personal effects." But the trunk of a car is also intended as such a repository, and thus it is not apparent why, if "[b]y placing personal effects inside a double-locked footlocker, respondents [in *Chadwick*] manifested an expectation that the contents would remain free from public examination," there is not the same expectation when effects are secured in the locked trunk of a car. It will not suffice to

point to what the Court in *Chadwick* called "the diminished expectation of privacy which surrounds the automobile," for the reasons given for that reduced expectation are inapplicable to the locked trunk—its contents are not in plain view, looking within the trunk would not "ordinarily be permissible in order to insure the running safety of a car," and an impounded car and its contents may be adequately protected without intruding into a locked trunk. [II LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.2, pp. 540–41 (1978 and Supp. 1980) (footnotes omitted).]

We find this argument persuasive. Although an individual may not reasonably expect the same degree of privacy in a car trunk as in a home or office, an individual may justifiably have a greater expectation of privacy in the locked trunk than in the interior of his car.[3]

We recognize that this conclusion is at odds with that reached by the Tenth Circuit in *United States v. Martin*, 566 F.2d 1143, 1145 (10th Cir. 1977), which held that *Opperman* established the reasonableness of routine inventory searches of locked automobile trunks.[4] We believe, however, that the facts of *Opperman*, in light of its holding, do not mandate such a result. The Court in *Opperman* limited its holding to a search of the interior and unlocked glove compartment of a vehicle. 428 U.S. at 376, 96 S.Ct. at 3100. Justice Powell, who provided the fifth vote for the majority opinion, apparently found it significant that the inventory search did not extend to an examination of the locked trunk. *Id.* at 380 n.6, 96 S.Ct. at 3102 n.6 (Powell, J., concurring). Because the Court's conclusion of reasonableness was tied to the specific areas searched,[5] *Opperman* does not require this court to approve the routine inventory search of a locked automobile trunk.

---

3. A number of state courts have found a higher expectation of privacy in locked automobile trunks than in the rest of the car. *See, e. g., State v. Patino*, 83 N.J. 1, 414 A.2d 1327, 1329 (N.J.1980) (plurality opinion); *Commonwealth v. Long*, 489 Pa. 369, 414 A.2d 113, 116–17 (Pa.1980); *Wimberly v. Superior Court*, 16 Cal.3d 557, 128 Cal.Rptr. 641, 547 P.2d 417,

423–24 (Cal.1976); *contra State v. Ruffino*, 612 P.2d 1311, 1312–13 (N.M.1980).

4. The Fifth Circuit as well has indicated in dictum that limited inventory searches of car trunks are allowable. *United States v. Edwards, supra*, 577 F.2d at 893.

5. The Court thought it reasonable for the police to enter the car and conduct an inventory after

■ We hold, therefore, that the needs of the Government in conducting an inventory search may be ordinarily accomplished without the serious intrusion into the locked trunk of an automobile.[6] Absent a special justification for a more extensive intrusion,[7] the routine search of a locked automobile trunk is unreasonable under the fourth amendment.

The particular facts of this case make the search of Wilson's automobile trunk especially unreasonable. In *Opperman*, the Court noted that the car's owner "was not present to make other arrangements for the safekeeping of his belongings" and that the "inventory itself was prompted by the presence in plain view of a number of valuables inside the car." *United States v. Opper-*

*man, supra*, 428 U.S. at 375–76, 96 S.Ct. at 3100. Here, by contrast, the police offered no special justification for the search and Wilson was present during the search and capable of making other arrangements to safeguard his property. The police could have protected their interests as well as Wilson's without intruding into the privacy of the automobile trunk. The police, for example, could have asked for Wilson's consent to search the car, or, in the alternative, requested that Wilson arrange to remove the car himself or to relieve police from liability for claims. In addition, the police could have inventoried the locked trunk as a single unit. As this court has suggested in an analogous context, unit inventories might better serve the interests of the Government by minimizing "the possibility

---

an officer observed valuables on the dashboard and in the rear of the car. 428 U.S. at 366, 96 S.Ct. at 3095. This practice of securing property in plain view is standard procedure and has been accepted by many courts. *Id.* at 371, 96 S.Ct. at 3098. Once legitimately inside the car, the police could reasonably check the glove compartment. *Id.* at 376 n.10, 96 S.Ct. at 3100 n.10. The Court again noted that this was routine practice, accepted by a number of courts. The Court also found it reasonable for the police to assume that registration papers, identifying the owner of an abandoned car, might be found in the glove compartment. *Id.* at 371–72, 96 S.Ct. at 3098. These considerations do not apply to this case. Appellee provides no evidence that routine inventory searches commonly include locked trunks, that state courts have approved such searches, or that inventory searches of trunks aid in the identification of the vehicle's owner.

**6.** We note that this circuit, in *United States v. Lawson, supra*, held that where "the only justification for the search is bare police custody of the vehicle * * * reasonable protective measures do not extend to breaking into a locked trunk." 487 F.2d at 475. Although the opinion in *Opperman* undermines much of the reasoning in *Lawson*, we do not believe that *Opperman* requires a different result today.

**7.** The police specifically testified that the discovery of the sock containing ammunition or any other special circumstance did not influence the decision to search the automobile. At the suppression hearing Officer Burge testified:

Q Did you receive any information at that time that you checking with the police computer that there were any outstanding warrants on Mr. Wilson?

A Mr. Wilson had no outstanding warrants or warrants anywhere, according again to the police computer.

Q Now, again, is it standard Grandview police procedure that if a car is to be towed, it will have its contents inventoried?

A Yes, it's standard, we have a form we have to complete upon towing a car, it's required.

Q Was the decision to inventory the trunk, as Mr. Matula brought out on his direct examination, was that decision made irrespective of the sock and shells they found in the front seat?

A Yes, that's correct, it was.

Q And as I understand it, the car will be inventoried if the officer makes the decision to have the car towed?

A That's correct.

Q Was the form that you were talking about that helps the officer inventory the car's contents, does that include specific questions with respect to the trunk?

A Yes, it does, spare tire on there, we look for a spare tire which is usually found in a trunk of a car.

Again at trial, Burge testified:

Q And consequently there is no way that the sock or the shells influenced your decision as to whether or not to conduct the search, is that right?

A That's correct.

Because the police testified that they had no concern about any danger posed by the possible presence of a gun in the automobile, this case is unlike *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), upholding the warrantless search of the trunk of an automobile. Moreover, the appellee neither cites nor relies on *Cady* to justify the search of the trunk.

of loss and the possibility of false claims against police by the owner." *United States v. Bloomfield, supra,* 584 F.2d at 1202. As long as the police could show the trunk was never open while in their custody, the owner would have no claim involving property in the trunk.[8] Finally, this search was unnecessary because the police intended to retain control of Wilson's vehicle for only a short period of time until Wilson could post an appearance bond.

### III. *Conclusion.*

In view of the higher expectation of privacy in the trunk of an automobile, we conclude that under the circumstances the search of Wilson's trunk was unreasonable within the meaning of the fourth amendment and, therefore, hold that the court erroneously admitted into evidence the fruits of the search.[9] The judgment of the district court must be vacated and the case remanded for a new trial.

---

8. The district court distinguished *Bloomfield* by noting that in Wilson's case the police do not themselves maintain custody of the automobile. We do not believe that this fact is sufficient to justify the search of a locked trunk. The police are expected to make adequate arrangements to secure cars in their custody without engaging in unreasonable searches.

9. The search of the interior of the car was reasonable under *Opperman,* and, therefore, the ammunition seized from the interior was properly admitted into evidence.