**STATE of Missouri, Respondent,**

v.

**David Paul HARVEY, Appellant.**

**No. 61836.**

Supreme Court of Missouri,
En Banc.

March 29, 1983.

Rehearing Denied April 26, 1983.

Peter Stragand, St. Louis, for appellant.

John Ashcroft, Atty. Gen., John Morris, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant was convicted by a jury of forcible rape, § 559.260, RSMo Supp.1975, and armed criminal action, § 559.225, RSMo Supp.1976. He was sentenced to fifty years in prison for armed criminal action and life in prison for the rape, with the sentences to run consecutively. At the time this case was submitted, this Court had exclusive appellate jurisdiction in cases in which a life sentence was imposed. The 1982 amendment to Mo. Const. art. V, § 3 divested this Court of such jurisdiction, but we have determined that "in the interest of judicial economy" we will "retain those life imprisonment cases under submission to this Court on the effective date of the amendment." *State v. Martin,* 644 S.W.2d 359, 360 (Mo. banc 1983). We affirm.

Appellant does not challenge the sufficiency of the evidence. It suffices to say that the complainant, whom we shall identify only as Dianne, was accosted by a man carrying a sawed-off rifle at approximately 8 p.m. on January 23, 1978, as she was walking home from a laundromat in the Laclede Towne section of St. Louis. The assailant forced Dianne into a parked car. He drove around for a while and then parked the car and raped Dianne, forcing her submission by the threat of the rifle. Dianne was told to keep her head down during the drive and was told not to look at the assailant during the rape, but she testified that she had adequate opportunity to view her assailant's face.

Several other rapes had occurred in the same vicinity. On the evening of January 30, 1978, one week after Dianne was abducted and raped, two plain clothes police detectives were returning Dianne and two other women, both of whom apparently were also rape victims, to their homes after they had viewed a lineup of suspects. None of the three women had identified as her assailant any of the men in that lineup. As they passed the spot at which Dianne had been abducted, one of the other women saw her car, which had been stolen three days

before. It was parked at an angle on the side of the street with its trunk facing the curb, as was the car into which Dianne had been forced. The detectives confirmed through a computer license registration check that the car was indeed stolen. They left the women with officers in another car and returned to place the stolen car under surveillance.

Approximately fifteen minutes later appellant approached the car with a red and white vinyl attaché case under his right arm. He got in the car and started it, and when he did so the officers approached. Detective James Glasscock drove the unmarked police car in front of appellant's car while Detective Anthony Wachter approached on foot from behind, drew his revolver, and ordered appellant to step out of the car. Appellant complied without incident. The officers arrested appellant for automobile theft and handcuffed him.

At that point, while appellant was standing handcuffed beside the car, Detective Glasscock picked up the red and white vinyl attaché case from off the front seat. He testified that he thought it probably contained personal effects that appellant would want to take with him to the police station. When he picked it up, however, Detective Glasscock discovered that it contained a heavy object. He suspected that the object was a rifle because he could feel the bolt action through the soft sides of the attaché case. Without first obtaining a search warrant, Detective Glasscock opened the attaché case and found a sawed-off .22 caliber rifle and some shells. He confiscated the weapon and subsequently showed the weapon to Dianne, who identified it as the one her assailant had brandished. Dianne also identified appellant in a police lineup, as did several other women.

▪ Appellant first contends that the trial court erred in overruling his motion to suppress the rifle and ammunition because they were discovered during a constitutionally invalid search. We disagree. This case is governed by *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), in which the Supreme Court upheld

a similar warrantless search as one made incident to a lawful custodial arrest. Under the principle set forth in *Belton*, we find no constitutional infirmity in the search challenged here.

In *Belton* a New York Highway Patrol officer stopped a car for traveling at an excessive rate of speed. Four men, including Belton, were in the car. The officer smelled burnt marijuana and saw an envelope labeled "Supergold," which he associated with marijuana, lying on the floor of the car. When he discovered that none of the four men owned the car or was related to its owner, the officer ordered the men out of the car and arrested them for possession of marijuana. After patting down each of the men and separating them, the officer picked up the envelope and found that it contained marijuana. He then searched the men and proceeded to search the passenger compartment of the car, where he found Belton's leather jacket. He unzipped one jacket pocket and discovered cocaine. Belton was indicted for criminal possession of a controlled substance. He moved to suppress the cocaine on the ground that it had been seized during an unconstitutional search. The trial court overruled the motion, and Belton then pled guilty to a lesser charge but preserved his constitutional claim. *Id.* at 455–56, 101 S.Ct. at 2861.

The Supreme Court upheld the search. The Court began with the principle established in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 685 (1969), that a "contemporaneous search without a warrant of the person arrested and of the immediately surrounding area" is justified incident to a lawful custodial arrest "because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." *Belton*, 453 U.S. at 457, 101 S.Ct. at 2862 (quoting *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040). It then proceeded to "determine the meaning of *Chimel*'s principles" regarding the "problematic" question of "the proper scope of a search of

the interior of an automobile incident to a lawful custodial arrest of its occupants." *Id.* at 459, 460 n. 3, 101 S.Ct. at 2863, 2864 n. 3. Noting the need for a "workable," "straightforward rule," *Id.* at 459–60, 101 S.Ct. at 2863–64, the Court held that

> when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
>
> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers in it be within his reach. . . . Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

*Id.* at 460–61, 101 S.Ct. at 2864 (footnotes omitted). The Court defined "container" as "any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *Id.* at 460 n. 4, 101 S.Ct. at 2864 n. 4.

We agree with appellant that *Belton* can be distinguished from the present case factually. The obvious, but unarticulated, exigency in *Belton*—that the four apparently unhandcuffed arrestees might overpower the lone police officer and conceal or de-stroy crucial evidence—does not exist here. It would strain the imagination to hypothesize that appellant, handcuffed as he was, might somehow have overpowered the two armed detectives and gained possession of the rifle. Yet for two interrelated reasons we do not believe, as appellant argues, that *Belton* should be confined to its specific facts. First, the narrow reading of *Belton* that appellant urges [1] would flout the Court's avowed purpose of fashioning "the workable rule this category of cases requires." *Id.* at 460, 101 S.Ct. at 2864. Second, the Court clearly did not intend for *Belton* to be read so narrowly. Nowhere in its opinion did the Court contradict Justice Brennan's assertion in dissent that under the majority's approach "the result would presumably be the same even if [the officer] had handcuffed Belton and his companions in the patrol car before placing them under arrest." *Id.* at 468, 101 S.Ct. at 2868 (Brennan, J., dissenting). Furthermore, the Court specifically noted that the New York court believed

> that the search and seizure . . . could not have been incident to the . . . arrest, because [the officer], by the very act of searching [Belton's] jacket and seizing the contents of its pocket, had gained "exclusive control" of them. . . . But under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his "exclusive control."

*Id.* at 461–62 n. 5, 101 S.Ct. at 2864–65 n. 5. In this case there is no contention that appellant's arrest itself was invalid. We

**1.** Appellant argues that the language in *Belton* is overly broad and that the "strong principles of the justices are better expressed" in *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), which was decided the same day as *Belton*. *Robbins*, however, addressed the scope of the automobile exception to the warrant requirement and did not purport to decide whether the challenged search would have been permissible had it been made incident to a lawful custodial arrest. *See id.* at 428–29 & 429 n. 3, 101 S.Ct. at 2846–47, 2847 n. 3. We find appellant's argument regarding the "strong principles of the justices" somewhat curious, for *Robbins* spawned five separate opinions, none of which commanded a majority of the Court and in none of which Chief Justice Burger joined. Moreover, *Robbins* was effectively overruled less than a year later by *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In this case, as in *Belton*, 453 U.S. at 462 n. 6, 101 S.Ct. at 2865 n. 6, it is unnecessary to consider whether the search and seizure were permissible under the automobile exception to the warrant requirement.

hold that under *Belton* the challenged search was valid as one made incident to a lawful custodial arrest.

■ Appellant's second argument is that punishment for both forcible rape and armed criminal action violates the fifth amendment prohibition against double jeopardy. Under our prior decisions appellant's claim would have been sustained routinely. *See State v. Arnold,* 628 S.W.2d 665, 667 (Mo. 1982); *State v. Fletcher,* 619 S.W.2d 57, 58 (Mo. banc 1981). *See also State v. Greer,* 619 S.W.2d 62, 63 (Mo. banc 1981). We delayed decision in this case, however, pending the Supreme Court's decision in *Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Under the authority of that case we are compelled to reject appellant's contention, for we are not free to impose "greater restrictions" upon the state "as a matter of *federal constitutional law* when [the Supreme] Court specifically refrains from imposing them." *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975).

The judgment is affirmed.

RENDLEN, C.J., and HIGGINS, GUNN, BILLINGS and DONNELLY, JJ., concur.

SEILER, Senior Judge, concurs in separate opinion filed.

BLACKMAR, J., not participating because not a member of the Court when cause was submitted.

SEILER, Senior Judge, concurring.

This case was first heard in Division I of this court, where the judgment was affirmed but the case was transferred to the court en banc by reason of a dissent. Judge Nugent of the court of appeals, western district, sat in Division One as a special judge and filed a concurring opinion in which he concurred in the conclusion of the court that the seizure of defendant's satchel and its search by the officer were proper and that that the motion to suppress as

evidence the firearm and ammunition was correctly denied, but saw no need, however, to rely on *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), to support said ruling. I agree with Judge Nugent and am therefore filing this concurring opinion, which adopts much of what he said in his concurring opinion, as follows:

As the opinion of this court indicates, the eighteen-inch satchel was made of soft vinyl which permitted the seizing officer to feel the bolt of the shortened rifle. He already knew that the suspect had used such a weapon. The instant he picked up the satchel, its weight and the contours of its rigid contents convinced him that a sawed-off bolt-action rifle was inside.

At that point the officer had done nothing which the law prohibits. He had a right to make a visual examination of the front seat of the stolen car, *State v. Harre,* 280 S.W.2d 41, 43 (Mo.1955); *State v. Campbell,* 262 S.W.2d 5, 9 (Mo.1953), and to lift the satchel from the seat. *State v. Rankin,* 477 S.W.2d 72, 75 (Mo.1972); *State v. Quinn,* 565 S.W.2d 665, 672 (Mo.App. 1978); *State v. Holman,* 556 S.W.2d 499, 505 (Mo.App.1977). Both of those proper actions of the officer resulted in giving him probable cause to believe the firearm was inside the satchel. The opening of the satchel after seizure and the seizure of the firearm itself were also authorized by the plain view doctrine. *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); *United States v. Wilson,* 524 F.2d 595, 599 (8th Cir.1975), *cert. denied,* 424 U.S. 945, 96 S.Ct. 1415, 47 L.Ed.2d 351 (1976); *State v. Quinn, supra.* The firearm itself was contraband, almost certainly manufactured and possessed in violation of federal and state law.[1] As soon as he realized he had such a firearm in his hands—even before he opened the satchel— the officer was duty-bound to seize it.

Thus, the invocation of *New York v. Belton, supra,* to decide this case is unnecessary.

---

1. 26 U.S.C. § 5861(c) and § 571.115 RSMo 1978, now § 571.030 RSMo 1981. (In 1981 Missouri adopted a new statute, § 571.020 RSMo [HB 296], which makes possession of a

"shortbarrelled" rifle unlawful. The legal minimum overall length for a rifle or shotgun is twenty-six inches under both the new Missouri statute and the federal law).

In case after case, *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), to name a few, the reasonability of the search and the *scope* of the search have been directly related to the necessity to protect the policeman and to prevent destruction of perishable evidence. All of those cases stand for the proposition that if under the circumstances the *scope* of search was reasonable, the search was constitutionally reasonable. But *Belton* departs from the test of necessity, justifying the departure only in terms of what really amounts to a rule of thumb for the convenience of the police. It does so in the face of two obvious facts of street life: First, certain containers and their contents in the passenger compartments of automobiles will under no circumstances constitute a threat either to the arresting officer or to destructible evidence. Examples are plentiful and include closed suitcases and sealed packages and boxes. Second, the policeman is a trained and professional judge of the hazards to himself and the evidence in the circumstances and, therefore, of the necessity of an immediate examination of the passenger compartment and its contents. Permitting the policeman to open containers simply because they are there even when he knows that they cannot possibly constitute a threat may not be justified on the principles which traditionally have sustained incidental searches. A trained professional should have no more difficulty in deciding when he and evidence are endangered than he does in making the decisions he must make every day regarding probable cause to arrest, existence of exigent circumstances, and use of his firearm.

Protection of constitutional liberties ought not to be governed by rules of thumb. The courts should be as tightfisted as possible with the rights if the people, not giving them away, diluting them or sliding over them as though they did not exist. Long before *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct.

1684, 6 L.Ed.2d 1081 (1961), this court en banc held that upon proper motion by defendant, under the Constitution of Missouri, evidence discovered by an unlawful warrantless search must be suppressed. *State v. Owens,* 302 Mo. 348, 259 S.W. 100 (1924). This defendant filed such a motion. Missourians are not bound to surrender any of the constitutional liberties preserved by the Missouri Constitution simply because the United States Supreme Court sees fit to limit or dilute some of the rights guaranteed in the federal Bill of Rights.

A policeman ought to be free to search the passenger compartments of automobiles when necessity dictates but, at least in Missouri, he may not without a search warrant open closed or sealed packages, briefcases, suitcases, and the like which constitute no possible threat to him or to the evidence within.

In other respects, I concur.