STATE of Missouri,
Plaintiff-Respondent,

v.

Marsie Lee WILLIAMS,
Defendant-Appellant.

No. 12664.

Missouri Court of Appeals,
Southern District,
Division Two.

June 8, 1983.

Motion for Rehearing Overruled and To Transfer to Supreme Court Denied June 30, 1983.

Application to Transfer Denied Aug. 16, 1983.

John D. Ashcroft, Atty. Gen., Douglas Lind, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Debra S. Hans, Asst. Public Defender, Springfield, for defendant-appellant.

PREWITT, Judge.

Appellant was convicted following jury trial of two counts of the class C felony of stealing. § 570.030, RSMo 1978. Appellant contends that the trial court erred in overruling her motion to suppress evidence of new clothing found by the police in the trunk of the car operated by her. She asserts that what the state contends was a valid inventory search of the automobile following its impoundment was actually a pretext for a search of the trunk. If evidence of the contents of the trunk were

inadmissible no submissible case was made against appellant.

On February 22, 1980, two incidents of suspected shoplifting were reported to the Springfield Police Department. They occurred in two stores in the Plaza Towers Shopping Center. Similar descriptions of three females suspected were given to the police by employees of each store. Two of the women were white and one was black. Appellant is black. After the women left the stores, clothing was missing. They were not seen taking anything. A description of the vehicle that they were believed to be traveling in and its license plate were also given.

The police located the vehicle parked and unoccupied on the Battlefield Mall parking lot in Springfield. An officer remained nearby, observing the car. He saw appellant walk from the Mall, get in the car, and start to drive it away. He then stopped it. After the vehicle was stopped appellant was asked to produce identification of herself and she directed the officer to the glove compartment where certain papers were found. It is not clear if those included a driver's license.

Apparently in response to questions from him, appellant informed the officer that she was alone and that the car belonged to a friend. By use of his car radio, the officer "ran" a "license check" on the license plate and "a wanted check" on appellant. This disclosed that appellant was wanted for a speeding violation in Johnson County, Missouri. The check on the license plate indicated that the number was not "on file". The officer testified that this may indicate that the plates had been newly issued or that the file on them had been pulled for some other reason. There was no indication that the vehicle was stolen. While the officer was talking to appellant, two white females matching the descriptions of the other shoplifting suspects approached the car. Defendant stated that she had just met them, and apparently had given them a ride to the Mall.

The officer then arrested appellant for the speeding violation. He told her that because she said the car was not hers and ownership of it could not be established, that it would have to be impounded and towed away. Appellant then stated that the car did belong to her and that the other two females were friends of hers and asked that the vehicle be turned over to them. The officer testified that he told her that since she had previously stated that the car did not belong to her and that she had just met the women, and ownership of the car could not be established, he would not allow them to have the car.

The officer then informed appellant that he would have to conduct an inventory search of the car. She said that she did not have a key to the trunk. The officer took the keys to the vehicle from her and found a key to fit the trunk on the key ring. Prior to opening the trunk the owner of one of the stores that had reported the shoplifting arrived at the scene. She stated to the officers that they would find the missing clothing in the trunk of the car. The officer opened the trunk and it contained numerous pieces of clothing with tags still on them. The owner identified some of the clothes found in the trunk as those missing from her store. Some of the clothing in the trunk was taken to the other store and was identified as items taken from that store without payment or permission.

During these events and before the trunk was inventoried, two other police officers arrived. The three officers basically testified that the inventory was performed in accordance with standard police procedure and that vehicle impoundment is routine when the driver is arrested and the ownership of the vehicle is questioned. They stated that for the protection of both the police and the owner of the vehicle it was not normal police practice to leave a vehicle sitting at any location.

The state maintains, both at trial and here, that the opening of the trunk was justified as a valid inventory of an impounded vehicle conducted in accordance with departmental regulations. No contention is made that there was probable cause to arrest appellant for stealing or that there

was any basis for an investigative search of the trunk. See *State v. Eaton,* 504 S.W.2d 12, 18–19 (Mo.1973); *State v. Jackson,* 646 S.W.2d 367 (Mo.App.1982).

As these issues are not presented here we do not address them except to note that generally an arrest for a traffic violation standing by itself will not provide probable cause for an officer to believe that the contents of an automobile offend against the law to justify searching the entire automobile. *State v. Achter,* 512 S.W.2d 894, 902 (Mo.App.1974).

Although whether an inventory of an impounded vehicle constitutes a "search" within the meaning of the Fourth Amendment has been debated, the better view seems to be that such intrusions are searches and as such they are subject to the reasonableness requirement of the Fourth Amendment. 2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 7.4, pp. 563–565 (1978). See also *South Dakota v. Opperman,* 428 U.S. 364, 372–373, 96 S.Ct. 3092, 3098–3099, 49 L.Ed.2d 1000 (1976); *United States v. Wilson,* 636 F.2d 1161, 1163 (8th Cir.1980); *United States v. Lawson,* 487 F.2d 468, 472 (8th Cir.1973).

Searches conducted outside the judicial process are unreasonable with a few specifically established and well-delineated exceptions, and the one who seeks to invoke such an exception has the burden of showing the need for it. *State v. Achter,* supra, 512 S.W.2d at 899. Consistent with the protection afforded by the Fourth Amendment of the United States Constitution, warrantless searches are prima facie invalid and may be subsequently condoned only if shown to have been justified by reason of specific exceptions. *State v. Peterson,* 583 S.W.2d 277, 280 (Mo.App.1979). The burden is on the state to justify the failure to procure a warrant. Id. Searches of automobiles are, in general, subject to the same prescriptions attendant upon warrantless searches of dwellings, although the expecta-

tion of privacy is somewhat less in an automobile than in a home. Id. 583 S.W.2d at 280–281.

Inventory searches of vehicles following police impoundment are generally justified for three reasons: (1) the protection of the vehicle owner's property, (2) the protection of the police from claims of lost property, and (3) the protection of the police from potential danger. *South Dakota v. Opperman,* supra, 428 U.S. at 369, 96 S.Ct. at 3097; *State v. Valentine,* 584 S.W.2d 92, 98 (Mo. banc 1979). Other authorities say there are but two reasons: To protect the vehicle and the property in it, and to safeguard the police from claims for lost possessions. 2 LaFave, supra, § 7.4, p. 565.

The lawfulness of police custody of the vehicle and the subsequent inventory begins with the validity of the initial stop. *State v. Valentine,* supra, 584 S.W.2d at 98. See also *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Witherspoon,* 460 S.W.2d 281 (Mo.1970). As the validity of the stop is not questioned, we do not discuss that question.

The impoundment which precedes an inventory search without a warrant is justified only if the vehicle is associated with the commission of an offense or the arrest of defendant or if the location or condition of the vehicle is such that the safety or interest of the public requires its removal and police intervention is the only viable option. *State v. Peterson,* supra, 583 S.W.2d at 281–282. See also *State v. Gibeson,* 614 S.W.2d 14, 15 (Mo.App.1981).* We also do not decide if impoundment of the car was proper, as even if it was proper, opening the trunk was not reasonable under the circumstances here.

A legitimate seizure does not automatically justify an unlimited search of an automobile; the Fourth Amendment requires that an inventory search be reasonable in scope. *United States v. Wilson,* su-

---

* Section 300.595, RSMo 1978, which provides for police removal of unattended or disabled vehicles from public streets is not applicable here as appellant's vehicle was located on the parking lot of a shopping mall.

pra, 636 F.2d at 1163. The pretext of property protection cannot be used as a subterfuge to avoid securing a warrant to search for incriminating evidence. *State v. Peterson, supra,* 583 S.W.2d at 282. See also Annot., "Lawfulness of 'Inventory Search' of Motor Vehicle Impounded by Police", 48 A.L.R.3d 537, 544 (1973).

The state has the burden to justify the reasonableness of entering the trunk and under these circumstances we do not think that has been done. The state does not contend that the police had any reasonable belief that there was contraband in the trunk or that its contents otherwise offended against the law. Neither the police nor the public were shown to be in any danger by the contents of the trunk or to think that such a danger might be caused by items there. The three police officers appearing on behalf of the state testified that automobile trunks are routinely inventoried if a trunk key is available and that the inventory in question was conducted pursuant to police regulations. While a particular police procedure may be reasonable in and of itself, the validity of the search must be measured by the reasonableness requirement of the Fourth Amendment. *United States v. Lawson, supra,* 487 F.2d at 475. The circumstances of the case, not the presence or absence of a police regulation determine whether this requirement was met. *Id.* 487 F.2d at 477.

Neither party cites a case where the state courts of Missouri or the United States Supreme Court has determined the validity of an inventory search of a locked trunk and we find none. In *Opperman,* the trunk was not opened. In *Wilson,* an inventory search of a locked trunk after a defendant had been arrested for a traffic violation and before the automobile was towed to a private storage yard was held unreasonable. The only real distinction between *Wilson* and here is that Wilson owned the car and here its ownership was in question. The question of its ownership was the reason that the vehicle was impounded here, according to the police officers, and that would be relevant only to the issue of the validity of the impoundment and not to the reasonableness of the scope of the inventory.

*United States v. Lawson, supra,* decided prior to *Opperman,* held that where the only justification for the search was police custody of the vehicle, seizure of a gun from a locked trunk was improper and the gun was not admissible in evidence. *State v. Achter, supra,* 512 S.W.2d at 904, cites *Lawson* in a footnote, stating that a search of the trunk of a car probably could not qualify as an inventory search. See also Annot., supra, 48 A.L.R.3d at 578. Other courts, see *United States v. Martin,* 566 F.2d 1143 (10th Cir.1977); *State v. Ruffino,* 94 N.M. 500, 612 P.2d 1311 (1980); Annot., supra, 48 A.L.R.3d at 577, have concluded that an inventory search may include entry to a locked trunk.

The state puts emphasis upon the holding of *United States v. Maier,* 691 F.2d 421 (8th Cir.1982). There an inventory search of the camper portion of a pickup truck was upheld. *Maier* carefully distinguished its circumstances from those in *Wilson.* See 691 F.2d at 423–425. In *Maier,* there was a bank pouch in plain view which contained a large amount of cash and, in looking through a window in the camper, the police observed other items of personal property. In *Opperman,* the inventory was prompted by the presence in plain view of a number of valuables inside the vehicle. Of course, where valuables can be seen, the likelihood of a break-in of the portion of the vehicle where they are is increased. Here, the record reveals that the only item of value in plain view in the passenger compartment was a hat on the back seat, an item unlikely to cause the vehicle to be illegally entered by a thief, and certainly not likely to increase the possibility of a break-in to the trunk.

There is a greater expectation of privacy in the locked trunk of an automobile than in the interior of a car. *Wilson, supra,* 636 F.2d at 1164. In *Wilson,* the court concluded that the police could have inventoried the locked trunk as a single unit and that the needs of the government in conducting

the inventory search may be ordinarily accomplished "without the serious intrusion into the locked trunk of an automobile"; that "[a]bsent a special justification for a more extensive intrusion, the routine search of a locked automobile trunk is unreasonable under the fourth amendment." 636 F.2d at 1165.

The nature of the charge for which appellant was arrested would indicate that she might be in custody but a short time, see Supreme Court Rule 37.16, and the state did not show any reason why the car would not have been returned to her following her release from custody. Nor did the state establish that there was any realistic possibility of loss to any items in the trunk during the period that appellant would normally have been in custody. If the vehicle was being taken for it and its contents' protection, presumably it was going to be taken to a place where they would be safer than on a parking lot. Items are frequently left in trunks in parking lots and were here. If the vehicle was to be taken to no safer place, then there would be no point in moving it, at least until the length of time that appellant might be in custody was determined.

The possibility of a claim against the police if they had custody of the vehicle for a short period, in a safe place, during daylight hours, is unlikely and an inventory would not absolutely prevent such a claim. No reason is shown why, if the police felt that they needed to take possession of the vehicle immediately, that it could not have been towed to a place of impoundment where its contents would have been safe, at least temporarily. If the vehicle was going to be held overnight or longer a better argument can be made for an inventory which would include the trunk, but as the facts appeared just prior to the inventory, there was no indication that the vehicle was likely to be held overnight. The purposes for which an inventory is justified did not reasonably call for an inventory of the trunk at the time made here. Whether it might have been justified later we do not decide.

The judgment is reversed and appellant ordered discharged.

HOGAN, J., concurs.

MAUS, P.J., dissents and files dissenting opinion.

MAUS, Presiding Judge, dissenting.

I must respectfully dissent. At the time in question there was probable cause to believe one black woman, accompanied by two white women, driving a white Oldsmobile bearing Oklahoma license plates, were shoplifting in stores on South Glenstone in Springfield. There is no contention made that a police officer did not lawfully stop such a white Oldsmobile being driven by the defendant from a parking lot of a shopping mall on South Glenstone.

It is conceded the officers at the scene then validly arrested the defendant upon a warrant issued from Johnson County, Missouri. Before the arrest the defendant, who was from Oklahoma, said the car belonged to a friend. She also said she had just met two white women who either came to or were brought to the scene. By a radio check, the officers learned the Oklahoma license was not "on file." Only after she was arrested did the defendant ask the officers to release the vehicle to the two white women.

The defendant was unable to verify her ownership of the car. Under such circumstances it was against police policy or regulations to so release the car. The established practice was to impound the car by having a private company tow the car to a privately owned place of impoundment. Under that practice it was mandatory that the car be inventoried before it was towed away. Where a key was available that inventory included the trunk.

The rules governing the validity of a warrantless search of motor vehicles have a long and tortuous history. Such searches have been upheld on a variety of bases. Recent decisions have established that circumstances may cause detailed and extensive searches to be reasonable. For example, the arrest of an occupant authorizes a

contemporaneous search of the passenger compartment and containers therein. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Under *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), a probable cause search may extend to the trunk and certain containers therein. The cases have been reviewed and *Belton* followed in *State v. Harvey,* 648 S.W.2d 87 (Mo. banc 1983).

The inventory of a motor vehicle is another basis for a reasonable search thereof.

It is common practice for the police to conduct an inventory of the contents of vehicles they have taken into their custody. This practice, which is often extended to vehicles the police have caused to be placed in the custody of some third party, such as a towing company, is typically mandated by a police department regulation. 'Inventory searches have two purposes: To protect the vehicle and the property in it, and to safeguard the police or other officers from claims of lost possessions.' It is thus customary for an inventory to extend to all parts of the car where personal property might be found, and to include an inventory of containers found within the vehicle. 2 LaFave, Search & Seizure § 7.4, p. 565–566.

The practice and reasons therefore were considered and approved in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In that case the automobile was towed to the police station for parking violations and searched in accordance with an established practice. In *Michigan v. Thomas,* 458 U.S. ——, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982), what at least started as an inventory search, disclosed marihuana in a glove compartment and a more thorough search extending even to the air vents was approved. The Supreme Court of this state, relying upon *South Dakota v. Opperman,* supra, approved a search that revealed a gun hidden near a fire wall just above the transmission hump where part of a heater was missing. *State v. Valentine,* 584 S.W.2d 92 (Mo. banc 1979). An inventory search of a locked camper was expressly approved in *United States v. Maier,* 691 F.2d 421 (8th Cir.1982), cert. den.,

—— U.S. ——, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). "To forbid entry into trunks as part of an inventory search would frustrate the very purpose of the inventory, since the trunk is a likely place for valuables to be stored." *State v. Ruffino,* 94 N.M. 500, 612 P.2d 1311, 1313 (1980).

We are aware that legal authority is to be found both approving and disapproving trunk inventory searches, but in view of the recognized purposes served by inventory searches, we conclude that the better-reasoned cases authorize police inventory searches of locked and unlocked automobile trunks, glove compartments, and other compartments of a vehicle in which the owner might reasonably be expected to put personal effects or items of value. *State v. Prober,* 98 Wis.2d 345, 297 N.W.2d 1, 6 (1980).

The cases are collected in *Prober.* An inventory search under the floormat was approved in *United States v. Edwards,* 577 F.2d 883 (5th Cir.1978); under the hood in *People v. Hardy,* 77 Ill.App.3d 37, 32 Ill.Dec. 513, 395 N.E.2d 743 (1979); in a trunk, *State v. Roberge,* 642 S.W.2d 716 (Tenn. 1982).

*State v. Peterson,* 583 S.W.2d 277 (Mo. App.1979) condemns an inventory search because of improper seizure and impoundment of a properly parked automobile. *United States v. Wilson,* 636 F.2d 1161 (8th Cir.1980) was distinguished in *United States v. Maier,* supra.

The appellant does not question the legality of her arrest. She was being taken into custody under a warrant issued from Johnson County. It was necessary that the officers do something with the automobile she was driving. Its impoundment was as necessary as the impoundment of a car parked for an impermissible time in *South Dakota v. Opperman,* supra. The evidence was that the officers proceeded in accordance with an established practice within the meaning of the rule quoted above. The finding of the trial court that the search was not conducted upon a pretext is supported by the evidence.

It has been suggested that impoundment might be improper if the officers did not comply with the reasonable request of an arrestee concerning the disposition of a vehicle he was driving. 2 LaFave, Search & Seizure § 7.3, p. 559. The appellant stated she did not own the automobile. The Oklahoma license plates were not listed. She said she had just met the two white women who arrived on the scene. Under these circumstances, the refusal of the officers to entrust the car to them was reasonable. *Lively v. State,* 427 A.2d 882 (Del.Supr. 1981); *Fields v. Florida,* 369 So.2d 603 (Fla. App.1978); *Daniels v. State,* 600 S.W.2d 813 (Tex.Cr.App.1980).

Further, the lack of pretext is established by the absence of any need to resort to pretext. The officers clearly had probable cause to believe the automobile contained stolen merchandise. They could have lawfully searched the automobile, including the trunk, under *United States v. Ross,* supra.

Still yet another principle establishes the search in question was not an unreasonable search.

> We have since held that the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.... The Court of Appeals which have considered the matter have likewise generally followed these principles, first examining the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved. *Scott v. United States,* 436 U.S. 128, 137–138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 178 (1978).

Even if the officers burned with justified curiosity to look in the trunk because of an unstated motive, the search was in accordance with an established practice and valid. 1 LaFave, Search & Seizure § 1.2 (Supp. 1983).

For the several reasons stated, I believe the officers followed standard police practice, opening the trunk was not unreasonable, and the inventory search valid. *South Dakota v. Opperman,* supra; *State v. Valentine,* supra. I have examined the appellant's other two points. Neither has merit. Therefore, I would affirm the judgment of the trial court.