**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**LEI VE`AVE`A, Defendant**

High Court of American Samoa
Trial Division

CR No. 34-98

August 19, 1998

Before RICHMOND, Associate Justice, Tauanu`u, Chief Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
For Defendant, Tautai A.F. Fa`alevao, Public Defender

## ORDER DENYING MOTION TO SUPPRESS EVIDENCE

### Background

Plaintiff American Samoa Government ("ASG") is charging defendant Lei Ve`ave`a ("Ve`ave`a") in this action with one count of possession of the controlled substance methamphetamine and one count of possession of the controlled substance marijuana.

On July 1, 1998, Ve`ave`a moved to suppress evidence seized from a 1996 Nissan pickup ("the pickup") on May 12, 1998. The evidence consisted of marijuana, 15 packages of methamphetamine, a scale of the

type used for weighing methamphetamine, additional packaging materials, and identification in Ve`ave`a's name. The hearing on the motion was held on July 27, 1998.

This case arose from a complaint of domestic abuse against Ve`ave`a. The alleged victims were his wife Monica Ve`ave`a ("Monica") and his minor son. Monica and several of her children moved to a shelter operated by the Division of Social Services ("DSS") of ASG's Department of Human Resources after this alleged abuse incident. Special Agent Moleli Tavai ("Tavai") and Det. Sgt. Solova`a Mageo ("Mageo") of ASG's Department of Public Safety ("BPS") investigated the case.

On May 6, 1998, at DPS' central police station in Fagatogo, Monica asked Tavai for help in recovering the pickup from Ve`ave`a. She asserted that Ve`ave`a took the pickup without her consent. She brought a copy of the vehicle registration, which showed that Monica was the sole registered owner of the pickup. Monica returned on May 8 to again request Tavai's help in securing return of the pickup.[1]

On May 12, 1998, Tavai and Mageo obtained a warrant from the District Court to arrest Ve`ave`a on one count of felony assault and two counts of misdemeanor assault. Tavai and Mageo were informed that Ve`ave`a was scheduled to be at the DSS office in Utulei that afternoon and arrived there at about 3:45 p.m. to execute the warrant. The pickup was parked outside the DSS, occupied in the passenger seat by Carlos Dutra ("Dutra"), a friend of both Ve`ave`a and Monica. Shortly thereafter, Ve`ave`a exited the building and was arrested. The arrest was approximately 36 to 40 feet from the pickup.

Ve`ave`a asked Tavai to let Dutra take the pickup. However, with Ve`ave`a in custody, Tavai decided to impound the pickup until it was returned to Monica. Tavai directed Sgt. Ellis Asuega to drive the pickup to the police substation in Tafuna, nearby the correctional facility. Dutra went to the substation in the pickup. Tavai and Mageo took Ve`ave`a to the same substation to process the arrest paperwork before taking him to the correctional facility.

All arrived at the substation about 4:30 p.m. Sgt. Asuega locked the pickup and gave the keys to Tavai. While processing the arrest, Tavai

---

[1] Monica testified at the motion hearing that she did not request Tavai's help to recover the pickup at the central police station and only did so indirectly through her social caseworker. Clearly, in any event, Monica conveyed to Tavai her desire for his assistance to repossess the pickup from Ve`ave`a.

111

called Monica's social caseworker and learned that Monica was on her way to the substation to recover the pickup. Concerned about a possible confrontation between Ve`ave`a and Monica, Tavai took Ve`ave`a to the correctional facility and waited for Monica.[2]

Tavai planned to inventory the personal property in the pickup in accordance with standard, though unwritten, police procedure. He was taught to follow this procedure at the Police Academy and later at continuing education sessions. An inventory of the contents of an impounded vehicle, in the owner's presence if possible, is designed to protect the owner's property in the vehicle and to guard the police against later false loss claims.

When Monica arrived at the substation, Tavai informed her of the inventory procedure and asked her for permission to conduct the search. She responded "very well" in Samoan.[3] Mageo began the search at about 5:10 p.m. Tavai and Monica watched him. Mageo found a pouch under the driver's seat. The main zipper was open,[4] and Mageo saw green leafy material in a plastic baggie just inside the pouch. As Mageo brought out the pouch, Tavai also observed the material. Monica said the pouch belonged to Ve`ave`a. Based on his training and certification in identifying controlled substances, Tavai believed the material appeared to be marijuana. Further inside the pouch, the officers found 15 packages of what appeared to be methamphetamine, a scale of the type used for weighing methamphetamine, additional packaging materials, and identification in Ve`ave`a's name.

---

[2] Monica testified that she was at the shelter at the time of the arrest and that when her social caseworker called to inform her of Ve`ave`a's arrest, she told the caseworker to advise Tavai that she wanted the pickup released to Dutra and to tell Dutra to bring the pickup to the substation where she would pick up the vehicle.

Tavai testified that the caseworker did not pass on this message to him. However, even if caseworker had done so, he would not, after the pickup was impounded, release the pickup until after a standard inventory search of its contents was made in Monica's presence.

[3] Monica testified that she consented to the inventory search by saying "okay."

[4] Monica testified that the main zipper was closed. Tavai testified that even if the pouch was zipped, he and Mageo would have opened the pouch in the normal course of inventorying vehicle contents, because closed containers like the pouch commonly hold valuables. We believe, however, that the pouch was unzipped.

## Discussion

We hold that the police officers conducted a valid search and seizure.

Article I, Section 5 of the Revised Constitution of American Samoa provides, in relevant part, that:

> The right of the people to be secure in their persons, houses, papers and effect, against unreasonable searches and seizures, shall not be violated and no warrant shall issue, but upon probable cause. . .

■ Because the Fourth Amendment of the U.S. Constitution is identical in relevant content, cases interpreting the Fourth Amendment provide appropriate guidance in applying Article I, Section 5 of our Constitution.

■ The Fourth Amendment does not require that every search be made pursuant to a warrant. The Fourth Amendment prohibits only unreasonable searches and seizures. *South Dakota v. Opperrnan,* 428 U.S. 364, 372-3, 96 S. Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976).

■ The test of the validity of a warrantless search is, therefore, whether the search was reasonable under all the circumstances. *United States v. Lawson,* 487 F.2d 473 (8th Cir. 1973) cited in *United States v. Mays,* 982 F.2d 319 (8th Cir. 1993).

■ Ve`ave`a initially argues that the search was unreasonable because it was not incident to a lawful arrest. A search incident to a lawful arrest is an exception permitting a warrantless search. However, because ASG justifiably relies on two grounds that are independent of this exception to validate the search of the pickup, we do not reach this issue.

Two distinct grounds support our conclusion that a reasonable search and seizure occurred. First, the search of the pickup was based on the valid consent of the person who had, or who the police officers reasonably believed had authority over the pickup. Second, the search of the vehicle was within the lawful bounds of an inventory incident to the impounding of the vehicle following the arrest of the person who had immediate control of it.

A. Consent to the Search

1. Monica's Authority

■ Consent to a search is another exception which obviates the need for

a warrant. *United States v. Patrone,* 948 F.2d 813, 815 (1st Cir. 1991). The Supreme Court recognized the right to consent when it stated that:

> [T]he community has a real interest in encouraging consent, for the resulting search may yield necessary evidence for the solution and prosecution of crime, evidence that may ensure that a wholly innocent person is not wrongly charged with a criminal offense.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 243 (1973).

■ Permission to conduct a search need not only come from the suspect. Anyone who has a reasonable expectation of privacy in the place being searched may consent to a warrantless search. *United States v. Eldridge,* 984 F.2d 943, 948 (8th Cir. 1993) (valid consent by driver to search car because car was in his immediate possession and control)

■ Determination of consent to enter must:

> be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? *Terry v. Ohio,* 392 U.S. 1, 21-22 (1969). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Illinois v. Rodrigues,* 497 U.S. 177, 188-189, 110 S. Ct. 2793, 111 L.Ed.2d 148 (1990).

In this instance, Tavai properly obtained consent from Monica, the registered owner of the pickup. Ve`ave`a was in possession and using the pickup. Monica gave Tavai a copy of the registration of the pickup showing Monica as the sole registered owner, and sought Tavai's assistance to recover the pickup on at least two occasions within days of Ve`ave`a's lawful arrest.[5] The pickup was parked in the immediate vicinity of Ve`ave`a's arrest. Shortly after the arrest, Tavai was informed that Monica was on her way to the substation to recover the pickup. As the registered owner of the pickup, Monica clearly had a "sufficient relationship to the premises or effects sought to be inspected."[6] *Matlock,*

---

[5] Ve`ave`a does not contest the validity of his arrest pursuant to the arrest warrant issued by the District Court.

[6] Even if we assume that Ve`ave`a had authority over the pickup by reason of his spousal relationship with Monica or by his possession of the pickup immediately before his arrest, consent of one having common

415 U.S. at 171. Moreover, Tavai certainly had reasonable grounds to impound the pickup, to have it moved to the substation, *see United States v. Nays,* 982 F.2d 319, 322 (8th Cir. 1993), and to believe that Monica had authority to consent to the search of it.

## 2. Scope of the Consent

■ The scope of a consent search is determined by how a reasonable person would have understood the conversation between the officer and the person when consent was given. *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L.Ed.2d 297 (1991) (consent to search vehicle includes implicit authorization to open paper bag found on floorboards). Here, Tavai performed a search within the scope of the consent. Tavai specifically asked Monica whether the car could be searched. The request was a general one. Monica consented to a general search of the vehicle when she responded "very well" or "okay."

## B. Inventory Search

■ The second independent ground validating the search is the inventory search itself. Inventory searches are "now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine,* 479 U.S. 367, 371, 107 S. Ct. 738, 93 L.Ed.2d 739 (1987). Again, the Fourth Amendment's reasonableness standard is used in analyzing the constitutionality of inventory searches. *Nays,* 982 F.2d at 321. The court "weigh[s] the governmental interests advanced by an inventory search against the privacy interests invaded in light of the particular circumstances of the case." *United States v. Wilson,* 636 F.2d 1161, 1163 (8th Cir. 1980).

## 1. ASG's Interests

ASG's interest in an inventory search includes protecting the public and the police from potential danger. *Colorado,* 479 U.S. 367, 373. In the interest of public safety, the police must often take a caretaking role, which includes the protection of the owner's property while it is in police custody. *Opperman,* 428 U.S. at 368; *Colorado,* 479 U.S. at 372.
■ In this situation, the police knew that Monica wanted the pickup

---

authority over premises or effects is valid as against the absent nonconsenting person with whom that authority is shared. *Frazier v. Cupp,* 394 U.S. 731, 740, 89 S. Ct. 1420, 22 L.Ed.2d 684, 693 (1969); *United States v. Matlock,* 315 U.S. 164, 171, 94 S. Ct. 988, 993, 39 L.Ed.2d 242 (1974); *United States v. Baldwin,* 644 F.2d 381 (5th Cir. 1981).

returned to her. Tavai also knew that Monica was coming to the police substation to take rightful possession of the pickup. At the same time, DPS would be responsible for any of Ve`ave`a's possessions in the pickup. Tavai made an informed and reasonable decision to search the pickup and exercise their custodial duty immediately under these circumstances. It was highly appropriate and reasonable for Tavai and Mageo to conduct the inventory search of the pickup to ensure that Ve`ave`a's property in the pickup would be properly returned to him before Monica received the pickup.

Moreover, Tavai was operating under standard, established procedures. Under *Opperman,* the Supreme Court held that inventory searches conducted pursuant to standard police procedures are reasonable. 428 U.S. at 372. "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment . . . ." *Bertine,* 479 U.S. at 374. These procedures are established, in part, to ensure that the owner's property is adequately accounted for and that potential ownership disputes over lost or stolen property may be minimized. *Opperman,* 428 U.S. at 369.

It was distinctly probable that the pickup would be released to Monica within a short time and any property Ve`ave`a had inside it was likely to fall into hands that were then hostile to him. The need to safeguard Ve`ave`a's property was compelling.

2. Privacy Interests

█ On the other hand, Ve`ave`a's privacy interests are extremely low. A diminished expectation of privacy already exists with respect to an automobile. *Cardwell v. Lewis,* 417 U.S. 583, 590, 94 Ct. 2464, 2469, 41 L.Ed.2d 325 (1974). Given that a violent domestic confrontation between Ve`ave`a and Monica had been reported and that Ve`ave`a had possession of Monica's pickup for some time without her consent, Ve`ave`a's privacy interests are even more diminished. ASG's interests in the inventory search, therefore, significantly outweigh Ve`ave`a's privacy interests.

### Order

For the reasons given, Ve`ave`a's motion to suppress evidence is denied.

It is so ordered.