**STATE of Missouri, Plaintiff–Appellant,**

v.

**Michael Layden MANTLE, Defendant–Respondent.**

**No. 16428.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 15, 1989.

**358**

Thomas E. Mountjoy, Pros. Atty., Sam S. Phillips, Chief Asst. Pros. Atty., Springfield, for plaintiff-appellant.

Scott B. Tinsley, William H. Wendt, Springfield, for defendant-respondent.

PREWITT, Judge.

The state appeals, as is allowed in § 547.200.1(2), RSMo 1986, from an order of the trial court sustaining defendant's motion to suppress. The motion sought to suppress evidence relating to marihuana found in the trunk of an automobile searched without a search warrant or the consent of the automobile's occupants.

The state contends that the evidence established that the motion should have been denied because the officers had probable cause to search the vehicle and the marihuana "would have inevitably been discovered pursuant to an inventory search of the vehicle."

Review here is to determine if the evidence supports the trial court's order. *State v. Johns,* 679 S.W.2d 253, 261 (Mo. banc 1984); *State v. Boggs,* 634 S.W.2d 447, 453 (Mo. banc 1982); *State v. Schieber,* 760 S.W.2d 557, 559 (Mo.App.1988). In reviewing an order of the trial court's suppressing evidence, the facts and reasonable inferences arising therefrom are to be considered favorably to the order and contrary evidence and inferences disregarded. *State v. Craig,* 759 S.W.2d 377, 379 (Mo. App.1988).

The state has the burden to prove by a preponderance of the evidence that a motion to suppress should be overruled. *Schieber,* 760 S.W.2d at 558. See also § 542.296.6, RSMo 1986 ("[t]he burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled"). The weight of the evidence and credibility of witnesses are questions for the trial court's resolution. *Boggs,* 634 S.W.2d at 453.

There is a general principle that searches conducted without a search warrant are unreasonable, subject to a few established and well-delineated exceptions. *State v. Quinn,* 565 S.W.2d 665, 670 (Mo.App.1978). One of these exceptions is the search of a motor vehicle where there is "probable cause" to believe that it contains a substance which offends against the law. Another is an inventory search of an impounded vehicle. Id. at 671–672.

"Probable cause" in this context means more than mere suspicion, but exists where there are facts and circumstances within the knowledge of the seizing officers, and of which they have reasonably trustworthy information, which are sufficient to warrant one of reasonable caution to have the belief that an offense has been or is being committed or that the contents of the automobile offend against the law. *State v. Hornbeck,* 492 S.W.2d 802, 805 (Mo.1973). See also *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890 (1949).

At the hearing on the motion to suppress, the state presented two witnesses, Corporal Matt Brown and Trooper Jack McMullin, both of the Missouri State Highway Patrol. Defendant did not offer any witnesses except for recalling Brown for further testimony. Their testimony was the only evidence offered. It revealed the following.

On December 9, 1988, defendant was operating an automobile on Interstate 44 in Greene County, Missouri. With him was a passenger, Alva Lundy. Corporal Brown stopped the vehicle for traveling 60 miles per hour in a 55 miles per hour zone. Brown first asked defendant for his operator's license and defendant said he did not have one in his possession, but that he had a valid Indiana license.

Brown also asked the two men, apparently separately, where they had been, where they were going, and who owned the car.

Brown said the men gave conflicting statements about where they had stayed in Arizona. He said he began to get suspicious when neither clearly were able to say who owned the car. Lundy told them that the owner had loaned him the car; later he said that he was buying the car from his cousin who had bought it from Sherri Perra. Brown said Mantle also gave a conflicting version of ownership although what he said was not stated. Defendant said he was driving for Lundy and that they had driven another vehicle from Indiana to Arizona.

Lundy took an Arizona title of ownership from the glove compartment and showed it to Brown. It showed that title to the vehicle was in the name of Sherri Perra and purported to have her signature assigning ownership of the vehicle on the back. Apparently there was a blank above the signature which would show who the vehicle was transferred to but that blank was not filled in. Nor was the signature notarized. Whether either of these possible deficiencies in the transfer is required in Arizona is not an issue presented here.

Brown said as he was talking to the men he became aware that this situation was similar to other drug arrests he had made in the past: transients passing through in a large "road" car, the car dirty and heavily laden, sitting low in the rear; and outfitted with good tires in relation to the age of the car, which was ten years old.

Brown returned to his vehicle and attempted to learn if an Indiana operator's license presently in force had been issued to defendant. He was unable to find that there was such a license. Brown also checked on the ownership of the vehicle and was told that title to it was shown in the name of Sherri and Allesandro Perra. Brown testified that he intended to take the vehicle into possession because of the "open" title, the question of ownership and conflicting answers.

While Brown was there with defendant and Lundy, Trooper McMullin arrived. He testified that because the car "appeared to be sitting low in the back" he became suspicious "that there may be something in the car such as contraband, such as the marijuana that was found." He testified that he then went to the right rear of the vehicle, put his nose down to the top seam of the trunk lid and smelled an odor that he felt was the odor of marihuana. He had smelled the odor before and it has "a distinct smell".

At some stage a request was made of defendant and Lundy that they consent to the search of the car. Defendant said that it was not his car but "I don't think I want you to search it". Brown testified that defendant said that it was "not up to me", that "he was along for the ride to keep Mr. Lundy awake" and that "he was only driving for Lundy". Lundy said he did not want them to search the trunk. Nevertheless, the officers opened the trunk apparently through a switch in the front of the car. In the trunk were sealed plastic bags containing marihuana. Several deodorant cartons were placed around the marihuana. Defendant and Lundy were arrested and charged with transportation and possession of marihuana.

There is no contention that the search was made incidental to a lawful arrest and the trial court found that neither defendant nor Lundy was arrested before the marihuana was discovered in the trunk. The trial court set forth the factors it found that Brown stated as justifying his belief that illegal drugs were being transferred as being:

1. The driver did not have a driver's license on his person.
2. There was no car title in the vehicle.
3. The vehicle was licensed in another state.
4. There were conflicting statements about ownership.
5. The driver said he had taken a different car to Arizona.
6. The rear of the vehicle set low as though heavily laden.
7. The car was dirty and indicated that it had been driven a long distance without cleaning.
8. The tires were uncharacteristically good for the age of the car.
9. The car was a "big road car".

In the order sustaining the motion the trial court determined that those facts were not sufficient to establish probable cause. It found that the search was unreasonable both under the United States and Missouri Constitutions. The trial court then stated that the next question was "whether the evidence from the backup officer that he smelled marihuana is sufficiently credible for the Court to believe that he in fact smelled the marihuana in the locked truck." The trial court found that it "cannot accept as credible ... the odor the backup officer described emanating from the trunk of Defendant's Lincoln Town Car or that he reasonably believed it emanated from the locked trunk."

The determination of the credibility of the officer was for the trial court. Under these facts we cannot say that its determination was unreasonable. The next question is whether there was probable cause absent the smelling of marihuana.

■ We agree with the trial court that although there were facts which would raise suspicion, they were not sufficient for a person of a reasonable caution to believe that an offense had been or was being committed. Probable cause was not present to validate the search. Compare *State v. Milliorn* (No. WD 41836, Mo.App. Western District October 17, 1989) and *State v. Burkhardt* (No. 16184, Mo.App. Southern District October 27, 1989).

■ We turn now to the contention that had a search not been made when it was that the marihuana would have inevitably been discovered through an inventory search of the vehicle. We conclude that it was not shown by a preponderance of the evidence that the vehicle would have been impounded for a sufficient time or reason to have justified an inventory search of the trunk. It was not shown that defendant or Lundy were improperly possessing the automobile. Any questions as to their possession might quickly have been cleared up.

■ Generally an arrest for a traffic violation will not provide probable cause for an officer to believe that the contents of the automobile offend against the law to justify searching the entire automobile. *State v. Williams*, 654 S.W.2d 238, 241 (Mo.App.1983).

■ Legitimate seizure does not automatically justify an unlimited search of the automobile. An inventory search must be reasonable in scope. *United States v. Wilson*, 636 F.2d 1161, 1163 (8th Cir.1980). See also Annotation, Lawfulness of "Inventory Search" of Motor Vehicle Impounded by Police, 48 A.L.R.3d 537, 544 (1973).

In *Wilson* an inventory search of a locked trunk after defendant had been arrested for a traffic violation and before the automobile was towed to a private storage yard was held unreasonable. There is greater expectation of privacy in the locked trunk of an automobile than in the interior of a car. *Wilson*, 636 F.2d at 1164; *Williams*, 654 S.W.2d at 242.

Unless there is a special justification for a more extensive intrusion the routine search of a locked automobile trunk is unreasonable under the fourth amendment. *Wilson*, 636 F.2d at 1165. The state has not shown by a preponderance of the evidence that the marihuana would have been discovered. It was not established that an inventory search would have been valid under these facts. Compare *Milliorn*, supra; *Williams*, supra.

The order is affirmed.

FLANIGAN, P.J., concurs.

MAUS, J., dissents and files dissenting opinion.

MAUS, Judge, dissenting.

I respectfully dissent. "Under the automobile exception to the warrant requirement an automobile may be searched without a warrant if there is probable cause to believe that the vehicle contains contraband. *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 283–84, 69 L.Ed. 543 (1925)." *United States v. Rodriguez–Pando*, 841 F.2d 1014, 1017 (10th Cir.1988). Also see *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

The legitimate extent of such a search is established in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

I agree that none of the nine factors listed above standing alone establish probable cause to believe that the Mantle automobile carried contraband. Perhaps no combination of any two or three of those factors establishes such probable cause. However, a determination of the existence of such probable cause is to be made upon the basis of consideration of *all of those factors* as part of the "totality of the circumstances." *United States v. Kohler*, 836 F.2d 885, 888 (5th Cir.1988). An appropriate inquiry is whether or not the combination of those factors was so distinctive and almost invariably associated with purveying drugs that it established probable cause to believe contraband was in the vehicle. *United States v. Kohler*, supra; *United States v. Rodriguez–Pando*, supra. I would hold that the probative value of the combination of those nine factors established probable cause.

There is an additional reason that I would hold the officer had probable cause to believe the Mantle vehicle carried contraband. That reason is the officer's knowledge that these factors were similar to factors present in other cases in which contraband had been found in a vehicle. That justification relies upon the officer's recognition of what has been termed a "drug courier profile". Such a profile in a number of cases has been held to be an insufficient basis to establish probable cause. See *State v. Cohen*, 103 N.M. 558, 711 P.2d 3 (1985), cert. denied, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986); LaFave, Search and Seizure, Vol. 3, § 9.3(c), at pp. 442–459 (1987). However, the term "profile" and those decisions should not be construed to reject an officer's right to draw an inference from the recognition of factors known to be common to an appreciable number of proven drug courier cases. Whether or not the significance of such common factors must be known to the officer from his own experience or may stem from the reported experiences of others is not at issue. Although,

it would seem such knowledge from either source would suffice, that need not be decided. Officer Brown had personal knowledge of such common factors. That he properly considered that knowledge in determining the existence of probable cause is well established. It is established

"[i]n all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling. *Terry v. Ohio*, 392 U.S. [1] at 27, [20 L.Ed.2d 889, 88 S.Ct. 1868 (1968)]."

*United States v. Brignoni–Ponce*, 422 U.S. 873, 886, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607, 619 (1975).

"As the court explained in *U.S. v. Davis*, 458 F.2d 819, 821 (D.C.Cir.1972), probable cause 'is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest *guided by his experience and training.*'"

W. Ringel, Searches & Seizures Arrests and Confessions, Vol. 1 § 4.1, p. 4–2 (1989) (emphasis added) (footnote omitted).

"[O]fficers are entitled to draw reasonable inferences from these facts in light of their knowledge of the area and their prior experience with aliens and smugglers."

*United States v. Ortiz*, 422 U.S. 891, 898, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623, 629 (1975). See also *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The nine factors listed in the principal opinion are similar to the factors considered in *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). That decision has been summarized in the following terms.

"Somewhat different from those cases are instances in which the suspected transportation of drugs is by vehicle. One such case, *United States v. Sharpe*, has reached the Supreme Court, where the majority, albeit unnecessarily, undertook a brief assessment of what would suffice to stop a suspected vehicle. The Court concluded that a reasonable suspicion existed where all of the following facts were present: (i) two vehicles had

traveled in tandem for over 20 miles; (ii) the area was near the coast and known to be frequented by drug traffickers; (iii) one of the vehicles was a pickup truck with a camper shell, often used to transport large quantities of marijuana; (iv) the windows of the camper were covered over with bed-sheet material rather than curtains; (v) the truck appeared to be heavily loaded; and (vi) both vehicles took evasive actions and started speeding when a state patrolman began to follow them. Assuming such a congery of facts, the conclusion in *Sharpe* that 'taken together as appraised by an experienced law enforcement officer, they provided clear justification to stop the vehicles and pursue a limited investigation,' is sound."

LaFave, Search and Seizure, Vol. 3 § 9.3(c), at pp. 447–448 (1987) (footnotes omitted); cf. *United States v. Brignoni–Ponce,* supra.

The foregoing principles have recently been confirmed by the Supreme Court of the United States in determining the existence of reasonable suspicion to justify a *Terry* stop.

"Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion.... We said in *Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam), 'there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot.' ... Indeed, *Terry* itself involved 'a series of acts, each of them perhaps innocent' if viewed separately, 'but which taken together warranted further investigation.' ... We noted in [*Illinois v. Gates,* 462 U.S.[, 213] at 243–244, n. 13, 103 S.Ct. [2317], at 2335 n. 13 [76 L.Ed.2d 527] (1983), that 'innocent behavior will frequently provide the basis for a showing of probable cause,' and that '[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of

noncriminal acts.' That principle applies equally well to the reasonable suspicion inquiry.

We do not agree with respondent that our analysis is somehow changed by the agents' belief[s] that his behavior was consistent with one of the DEA's 'drug courier profiles.' Brief for Respondent 14–21. A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a 'profile' *does not somehow detract from their evidentiary significance as seen by a trained agent."*

*United States v. Sokolow,* 490 U.S. ——, ——, 109 S.Ct. 1581, 1586–1587, 104 L.Ed.2d 1, 11–12 (1989) (emphasis added) (citations omitted).

I am aware that *Sokolow* involves a determination of reasonable suspicion and not probable cause. It is interesting to note, that in *Sokolow* the factors considered by the officer apparently served as the basis for a determination of probable cause in the issuance of a warrant. Be that as it may, *Sokolow* conclusively establishes the principles enunciated in that opinion are applicable to a determination of probable cause.

The distinction between reasonable suspicion and probable cause is elusive and a matter of degree.

"The thrust of the Court's opinion regarding the test for probable cause in Gates, later applied as well in *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), was that probable cause to search should be deemed to be established where *'there is a fair probability* that contraband or evidence of a crime will be found in a particular place.' 462 U.S. at 238 [103 S.Ct. at 2332]."

W. Ringel, Searches & Seizures Arrests and Confessions, Vol. 1 § 4.1(b), p. 4–8 (1989) (emphasis added).

"We have held that probable cause means 'fair probability that contraband or evidence of a crime will be found,' ...

and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause."

*United States v. Sokolow,* 490 U.S. at ——, 109 S.Ct. at 1585, 104 L.Ed.2d at 10 (citations omitted).

When the foregoing principles are applied in this case, I believe they establish that the combination of factors was so distinctive and probative the officer had probable cause to believe the Mantle vehicle carried contraband. I would reverse the decision of the circuit court and deny the motion to suppress.