**STATE of Missouri, Plaintiff–Appellant,**

v.

**Timothy Ivan ROBINSON, Defendant–Respondent.**

**No. 16649.**

Missouri Court of Appeals, Southern District, Division Two.

May 29, 1990.

Thomas E. Mountjoy, Pros. Atty., Ronald G. Cleek, Asst. Pros. Atty., Springfield, for plaintiff-appellant.

Donald R. Cooley, Springfield, for defendant-respondent.

SHRUM, Judge.

This is an appeal by the State from the trial court's order sustaining defendant's motion to suppress evidence. Interlocutory appeal of the trial court's order is authorized by § 547.200.1(2), RSMo 1986. The motion sought to suppress all evidence relating to items seized from defendant's automobile, including marijuana found in a suitcase. The motion also sought suppression of all statements by the defendant.

The State acknowledged at the suppression hearing that if evidence of the marijuana in the suitcase was suppressed, evidence of the statements and other evidence seized should be suppressed. All evidence seized from the defendant's automobile and statements made by the defendant after the seizure of a suitcase from the trunk of his automobile were suppressed. The State contends that the evidence shows that the trooper's removal of the suitcase from the trunk of defendant's car to the trooper's car was consensual. Alternatively, the State contends there was sufficient evidence to show probable cause for the trooper to seize the suitcase even if consent was not given.

At the suppression hearing the only witness who testified was Highway Patrolman Jack McMullin. He testified that he observed an automobile, in daylight hours, east bound on I–44 in Greene County being operated "a little erratic." As observed by the officer, the vehicle was within the legal speed limit. It had no equipment violations visible. It was not causing defensive action to be taken by other drivers.

The officer stopped the vehicle because of the erratic driving described. The defendant was identified as the driver of the motor vehicle stopped by the patrolman. Initially, defendant produced a valid driver's license. Defendant could not find the registration on the automobile. Defendant told the officer he was from Colony, Texas.

Defendant was asked to accompany the officer to the officer's car and defendant obliged. Defendant told the officer the automobile was his and a radio check verified the ownership to be as defendant had stated. While in the officer's car, the officer asked defendant where he was going, and the defendant answered, "Ohio." When asked where in Ohio, defendant answered, "Akron." The officer had seen "a couple of stickers" on the back window of defendant's car. At least one of the stickers mentioned the Cleveland Browns. The stickers appeared to the officer to be new. The officer testified that defendant told him that it had been "a couple of years" since he had been to Akron to see his parents. Defendant told the officer he was in the heating and air conditioning business. When asked about weather conditions in Texas, the defendant told the officer the weather in Texas was similar to that in Missouri, about five degrees. The officer asked defendant if he was married. The defendant answered in the affirmative and stated he had two children. When asked of their whereabouts, defendant told the officer that they were at home (in Texas); that the kids were kind of a problem to bring along.

While this conversation was going on, the officer described defendant as "somewhat nervous," but not visibly so. As of the time the officer initially asked defendant to go to the officers car, there was nothing that directed the officer's attention to any potential act by defendant that was unusual, other than "erratic driving." There was nothing in the vehicle that caught the officer's attention other than he noted some clothing hanging in the back seat of the vehicle. He did not smell anything within the interior of the vehicle in the nature of a controlled substance and saw nothing lying in the vehicle in any kind of container or package that indicated any kind of problem. After the radio check resulted in verification that defendant had a valid driver's license and the motor vehicle was his, the officer, at that time, had seen nothing about the defendant's car that

caused him to believe something was in it. At that point, in the officer's words, "Everything was okay." The officer testified that after the conversations in the officer's car, there wasn't anything that the defendant had told him that suggested to the officer that defendant was carrying any controlled substance. When asked, "[W]as there anything at that particular point in time that you can point to that gave you probable cause to believe that there was a controlled substance in his car," the patrolman answered, "No."

With that background, defendant was then asked what he had in the trunk of the car. Defendant answered, "[J]ust a couple of suitcase[s]." The officer told defendant at that point he wasn't interested in the contents of the suitcases, he simply wanted to see the contents of the trunk. Defendant went to his ignition, got the keys, and opened the trunk. The officer found the motor vehicle trunk contained two suitcases as defendant had stated. Defendant was then asked what was in the suitcases. He answered, "clothes." Then the defendant was asked if he objected to showing the officer the contents of the large suitcase. Defendant thereupon opened the large suitcase and clothes were seen in that suitcase.

Upon inquiry about the second suitcase, defendant answered that it belonged to his brother; that his brother was in Ohio and defendant was taking the suitcase to him; and that it contained clothing also. Defendant was asked if he objected to opening the second suitcase and, apparently without answering, defendant attempted to reach over and unlatch the second suitcase. The officer described defendant as becoming visibly shaken at that point. Defendant never opened the second suit case. When the suitcase was not opened, defendant said something about a key and went around to the driver's side of the vehicle, laid across the front seat, and began to search the glove compartment for keys. The officer accompanied defendant to the front of the motor vehicle as he searched

for the keys. The officer did not feel there was any indication of danger to himself at the time defendant searched for keys in the glove compartment. After defendant searched in the glove compartment for the keys, he and the patrolman returned to the back of the vehicle. The officer picked up the smaller suitcase and held it. He described it as feeling heavy, but not extremely heavy. After taking the suitcase out of the trunk, the officer took the suitcase to his patrol car. Concerning the removal of the suitcase from the trunk of defendant's car to the patrol car, the following testimony is found:

Q. [A]t the time that you actually opened the suitcase, the suitcase wasn't even in the car that he had been driving, was it?

A. No, it was in my car.

Q. And you did not ask him for his consent to remove the suitcase from his car, did you?

A. No.

Q. As a matter of fact you did not do anything in regard to attempting to get his approval or okay in literally seizing the suitcase from his car and taking it back and putting it in the patrol car, did you?

A. No, other than asking to show the contents of the suitcase.

Q. But he never would show you the contents of the suitcase, would he?

A. He attempted.

Q. Well, you say he attempted. You're also saying that he had in his possession an item that would have opened it, is that correct?

A. He had the key to the suitcase on the key ring that he had made attempts to open the suitcase for me.

Q. Where was the attempt made?

A. Where was the attempt made? The attempt was made at the car.

Q. Yeah.

A. And inside my car.

Q. All right.

A. With the keys.

Q. All right, fine. But you didn't ask him if you could remove the suitcase?

A. I didn't ask him if I could remove the suitcase from the car, no.

Q. And he did not remove the suitcase from the car?

A. No.

Q. And he did not hand you the keys to give you the opportunity to use whatever key that may or may not have fitted it to open it, did he?

A. Once we were inside my car, that's where I obtained the keys.

Q. After you arrested him?

A. After I arrested him, yes, sir.

Q. Prior to the time you arrested him he did not give you access to anything that would open that particular suitcase, did he? He wouldn't give you anything that would open it?

A. Okay, he didn't give me the keys to open the suitcase, no.

Q. All right. Now, when you removed the suitcase from the car—all right, you took the suitcase out of the car and was taking it back to your car, is that right?

A. Yes, sir.

Q. All right. You solely were in possession of the suitcase at that point, obviously, is that not correct?

A. Yes, sir.

In the patrol car, the defendant attempted to use numerous keys from his key ring to unlock the suitcase. The attempts were futile. It was at this point that the defendant broke down and asked the trooper to "Come on, give me a break," you know, just "Give me a break." The trooper then asked the defendant about the contents of the suitcase, and the defendant admitted that he had a small amount of marijuana inside. The patrolman explained the sequence of events in the patrol car as follows:

Q. The statements that he made back in the car that caused you to arrest him and open the suitcase. You had taken

that suitcase from his possession prior to that time, had you not?

A. Yes.

    \*    \*    \*    \*    \*    \*

Q. ... You took the suitcase from his possession when you removed it from the car, you literally, physically took it from the car yourself and yourself took it back to your car?

A. Yes, sir.

Q. All right. And you didn't ask him to do that?

A. No, sir.

The trooper found a key to the suitcase on the defendant's key ring and opened the suitcase. Inside he found several bags of marijuana. The trooper placed the defendant under arrest, Mirandized him, called a wrecker and had the defendant's automobile towed to Troop D headquarters. Defendant was charged with transportation and possession of marijuana and also with unlawful use of a weapon.

■ Upon review of the trial court's order suppressing evidence, the facts and reasonable inferences arising therefrom are to be considered favorably to the order challenged on appeal. *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985). Evidence and inferences contrary to the order are to be disregarded. *State v. Mantle*, 779 S.W.2d 357, 358 (Mo.App.1989). This case does not present any conflict in the evidence. The evidence can only be stated as it was presented. Thus, the only test applicable is to determine if the evidence supports the trial court's finding that the marijuana found in the suitcase and the defendant's statements should be suppressed. *State v. Johns*, 679 S.W.2d 253, 261 (Mo. banc 1984); *State v. Boggs*, 634 S.W.2d 447, 463 (Mo. banc 1982); *State v. Cross*, 757 S.W.2d 613, 614 (Mo.App.1988). Under § 542.296.6, RSMo 1986, the burden rests on the State to prove by a preponderance of the evidence that a motion to suppress should be overruled. *Mantle, infra.*

This court, in addressing warrantless searches and seizures, has relied on the principles established in *State v. Quinn*, 565 S.W.2d 665, 670 (Mo.App.1978), that searches conducted without a search warrant are unreasonable subject to a few well-delineated exceptions.

■ It is well established that a search conducted with the consent of the person is constitutionally permissible. *State v. Virdure*, 371 S.W.2d 196 (Mo.1963). The burden of proving a consent search is upon the State. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. The burden is to prove that the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968). The consent must be voluntary, unequivocal, free from coercion, either express or implied. *State v. Witherspoon*, 460 S.W.2d 281, 289 (Mo.1970).

■ There was a preponderance of evidence to support the finding of the trial court that consent to the seizure of the second suitcase by the trooper was lacking. It is true that a warrantless search or seizure is valid under the fourth amendment if made with proper voluntary consent. *State v. White*, 755 S.W.2d 363 (Mo. App.1988). Determination of whether or not the consent is voluntary is dependent upon many factors including, but not limited to, actions of the police officer as well as the actions of the defendant. *State v. McMahan*, 583 S.W.2d 540, 543 (Mo.App. 1979). The evidence is clear that before keys were produced by defendant with which the second suitcase could have been opened by either the officer or the defendant, the suitcase had been taken from defendant's car by the officer and placed in the officer's vehicle, all without the consent of the defendant.

The trooper was asked directly, "[Y]ou did not open the second suitcase with his (the defendant's) consent, did you?" The trooper replied, "No, no." The matter was further pursued as follows: "There's no issue at all about whether or not this man

consented to allow you to open that suitcase, is there?" The trooper responded, "That's correct." The Trooper went further to testify that he did not ask the defendant if he could remove the suitcase from the defendant's car and the trooper admits that it was he, not the defendant, that removed the suitcase from the defendant's car.

The State would have this court believe that the defendant's lack of verbal objection to the seizure constitutes a voluntary consent. However, the Supreme Court of this nation has held otherwise. *Bumper v. North Carolina,* 391 U.S. at 548, 88 S.Ct. at 1792, 20 L.Ed.2d at 802. Based upon the foregoing, the State's contention that the search and seizure was with defendant's consent must be rejected.

■ The next issue is whether the trial court erred in suppressing the evidence because of alleged probable cause to believe contraband or drugs were in the motor vehicle or in the suitcase. "Probable Cause" is a well-recognized exception, *State v. Quinn,* 565 S.W.2d at 671–72, as is consent. *State v. Rush,* 497 S.W.2d 213, 215–16 (Mo.App.1973). "Probable Cause" in this context means more than mere suspicion, but exists where there are facts and circumstances within the knowledge of the seizing officer, and of which he has reasonably trustworthy information, which are sufficient to warrant one of reasonable caution to have the belief that an offense has been or is being committed or that the contents of the automobile offend against the law. *State v. Mantle,* 779 S.W.2d at 358; *State v. Hornbeck,* 492 S.W.2d 802, 805 (Mo.1973). See also *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1890 (1949).

■ Here, the officer testified that as of the time he completed his verification of validity of the driver's license and vehicle registration, everything was okay and there was nothing to cause him to believe there was a controlled substance in the car. True, he had noticed the Cleveland Brown stickers on defendant's car, although defendant was going to Akron. He noted the defendant did not have his two children with him, although he had not visited with his parents in Akron for two years. The officer thought it strange that the defendant was going to Akron at that time of year given the fact that he was in the heating and air conditioning business. Despite these stated suspicions, the officer acknowledged that, at that point, he had no information from any source that there was anything illegal in defendant's vehicle. The only change which had occurred in objective facts known to the officer between the time that he concluded "[E]verything was okay" and the seizing of the suitcase, was his observations that: (1) the defendant had changed from being "somewhat nervous" to "visibly shaken" as defendant attempted to open the second suitcase; (2) the second suitcase was locked; (3) the defendant failed in his initial attempt to open the suitcase, and (4) the defendant went to the front of his vehicle allegedly to find keys to open the suitcase. Observations numbered 2, 3 and 4 last mentioned were consistent with defendant's lack of consent to the search of the second suitcase. The solitary circumstance of increased nervousness does not suffice for the intrusion into the motor vehicle for a search or for the seizing of the suitcase. *State v. Donohoe,* 770 S.W.2d 252, 258 (Mo.App.1989). After the last-mentioned facts were noted, the officer picked up the suitcase from the back of the trunk; he then described it (a) as heavy, and (b) as having something in it. Objective facts (a) and (b) cannot be considered in the "totality of the circumstances" because they come after the non-consensual seizure of the suitcase by the officer. None of the subsequent objective facts can be considered because they come after the seizure of the suitcase. In determining if probable cause existed for the officer to believe contraband or drugs were in the suitcase or vehicle, the fact that defendant used keys that were obviously too large to open the suitcase *after* the suitcase had been taken

to the patrol car, are not facts that can be considered in the "totality of the circumstances."

Finally, none of the objective facts mentioned by the officer were said by the officer to be common to an appreciable number of proven drug courier cases. This officer was a narcotics investigator and would have presumably known if such factors existed. With the record presented, it cannot be said that the trial court erred in suppressing the evidence and statements in this case. The order is affirmed.

HOGAN, C.J., FLANIGAN, P.J., and MAUS, J., concur.