Charles A. ZAMORANO,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 16569.

Missouri Court of Appeals,
Southern District,
Division Two.

July 13, 1990.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 2, 1990.

Rosalynn Koch, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

HOGAN, Judge.

Movant Charles A. Zamorano, to whom we shall refer as the defendant, pled guilty to a charge of transporting marihuana in violation of § 195.025, RSMo 1986,[1] and a charge of possession of more than 35 grams of marihuana in violation of § 195.020. Defendant's punishment was assessed at imprisonment for a term of ten (10) years for transportation of marihuana and five (5) years for possession of more than 35 grams of marihuana. It is particularly noted in the judgment and sentence that the defendant was not charged as a prior, persistent or class X offender. The defendant timely filed a motion to vacate or correct his pleas of guilty pursuant to Rule 24.035. After a hearing, the motion court denied relief. The defendant appeals. We affirm.

It appears that the defendant is a "mule" who was caught transporting 53 pounds of marihuana from Dallas to Chicago. The defendant appeared in the Circuit Court of Greene County on September 2, 1988, with employed counsel. The court addressed the defendant and his counsel personally in open court as provided by Rule 24.02(c). The defendant stated to the court that he wanted to withdraw his pleas of not guilty and enter a plea of guilty to both charges against him. Counsel for defendant announced that there was no plea bargain, "... but we would ask the Court to go ahead and give us our right to a presentence investigation report because the background of this young man will reflect favorably [upon him]." Preliminary interrogation by the court produced the information that the defendant was not known by any other name, that he was 30 years of age, had had "two years of college" and read, wrote and understood English. Several times the trial court inquired about the existence of a plea bargain; each time the court was advised there was no plea bargain but the State was prepared to recommend concurrent sentences. The court then addressed the defendant concerning his consultations with his attorney, thus:

\* \* \* \* \* \*

"THE COURT: All right. Mr. Zamorano, have you had an opportunity to discuss these charges with your lawyer?

THE DEFENDANT: Yes, sir, I have.

THE COURT: Have you told him all the facts that you know about these two charges?

THE DEFENDANT: Yes, sir, I have.

THE COURT: Has he explained to you what your legal rights are?

THE DEFENDANT: Yes, sir, he has.

THE COURT: And has he explained to you what the consequences of your plea of guilty would be to these two charges?

THE DEFENDANT: Yes, sir, he has.

THE COURT: Have you had enough time to talk to Mr. Wendt?

THE DEFENDANT: Yes, sir, I have.

THE COURT: Do you have any complaints or criticisms about Mr. Wendt?

THE DEFENDANT: No sir, I don't.

THE COURT: Are you satisfied with his services as your attorney?

THE DEFENDANT: Yes, sir, I am."

\* \* \* \* \* \*

1. References to statutes and rules are to RSMo 1986 and Missouri Rules of Court (19th ed.1988)

except where otherwise specifically noted.

The range of punishment was carefully explained to the defendant; he was undoubtedly aware that even in the absence of exacerbating circumstances, he could be sentenced to a term of imprisonment for not more than 20 years for transportation of marihuana and could be incarcerated for a term of one to five years for possession of more than 35 grams of marihuana. The defendant was carefully advised of the rights he would waive if he pled guilty, as required by Rule 24.02(b). The defendant admitted his guilt, as follows:

\* \* \* \* \* \*

"THE DEFENDANT: Sir, I know I had marijuana in my vehicle, and I was on my way down the road, and I'm pleading guilty to it. I know I am.

THE COURT: All right, sir. Where did you begin your trip?

THE DEFENDANT: From Dallas, Texas.

THE COURT: And where were you going?

THE DEFENDANT: To Chicago, Illinois.

THE COURT: And were you arrested for this in Greene County?

THE DEFENDANT: Yes, sir, I was.

THE COURT: On I–44, is that what you're telling me?

THE DEFENDANT: Yes, sir.

THE COURT: And where was the marijuana in your car?

THE DEFENDANT: In the back.

THE COURT: Trunk?

THE DEFENDANT: No, sir, it was a Suburban, it was in the back of the vehicle.

THE COURT: All right, sir, and about how much marijuana was it?

THE DEFENDANT: It was fifty-three pounds.

THE COURT: All right. And do you have any dispute about the date, January 15, 1988, is that substantially correct?

THE DEFENDANT: That's the date, sir.

THE COURT: I believe that covers Count I. Count II, Mr. Zamorano, you'll recall that that charge is a felony of possession of more than thirty-five grams of marijuana. And the allegation is that you possessed more than thirty-five grams of marijuana or [sic] or about January 15, 1988, in Greene County, Missouri. Is that true, sir?

THE DEFENDANT: Yes, sir."

\* \* \* \* \* \*

In deference to the defendant's request and that of his counsel, the trial court advised the defendant that a presentence investigation would be ordered, thus:

\* \* \* \* \* \*

"THE COURT: All right, sir. Now, you know Mr. Wendt has asked, and I will grant, a presentence investigation. I will order that the probation officer conduct a presentence investigation which means he'll look into your background and history, and make a written report to this Court. I will receive a copy and read it, your attorney will receive a copy, you will receive a copy, and you'll both have an opportunity to read it. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Now, the probation officer may or may not recommend probation. Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you understand that the Court is not bound to follow the probation officer's recommendation. Do you understand that?

THE DEFENDANT: Yes, sir."

\* \* \* \* \* \*

At the conclusion of the hearing on the plea of guilty, the court set a date for sentencing. When the defendant appeared for sentencing, he was asked if there were any errors or mistakes in the pre-sentence

report. The defendant stated there were, and the following colloquy ensued:

\* \* \* \* \* \*

"THE DEFENDANT: Okay. I was arrested in Juarez, Mexico, sir, and I was found guilty, but it was not of passing counterfeit money. It was a mere possession. I never passed any money at all.

THE COURT: Let me see. You were sentenced—sentenced by the Court to five years and three months in a Mexican prison and, during a prisoner exchange with the United States, you were transferred to a federal penitentiary at Latuna, New Mexico. Is that all—

THE DEFENDANT: That's true, but the part above that paragraph, Your Honor, it states, 'circumstances surrounding the charge, according to Zamorano, are that Zamorano and a companion were passing counterfeit'—well, I was never passing any counterfeit money.

THE COURT: And what is it that you said? What do you want to tell me? You were sentenced to five years and three months, true—

THE DEFENDANT: Yes, I was—

THE COURT: In 1981? And what was the charge?

THE DEFENDANT: It was just—it's Mexican possession.

MR. WENDT: Possession, I believe, rather than delivery or passing. Just a possession charge.

THE COURT: Possession of counterfeit bills?

THE DEFENDANT: Yes, sir.

THE COURT: Is that what you're telling me?

THE DEFENDANT: Yes, sir.

\* \* \* \* \* \*

THE COURT: So that in your own best way of translating it, would it be a correct and fair translation to say that it is akin or similar to possessing counterfeit bills?

THE DEFENDANT: Yes, sir, it was.

THE COURT: All right, sir.

THE DEFENDANT: And they made that very explicit when they charged me because it made a lot more time if I had been passing.

THE COURT: All right. In—are there any other errors or mistakes in this report that need to be brought to my attention?

(Discussion was had off record.)

MR. WENDT: Nothing else, Your Honor, of any significance that would bear on the question of length of sentence or probation.

THE COURT: All right. No other mistakes that you can see, Mr. Zamorano?

THE DEFENDANT: No."

\* \* \* \* \* \*

The court heard arguments from counsel and then addressed the defendant as follows:

\* \* \* \* \* \*

"Mr. Zamorano, your attorney has made an eloquent plea for me to give a light—a lighter sentence than that. And, of course, the State has requested that I give you a heavier sentence. Quite frankly, I was considering a fourteen to fifteen-year sentence, but I'm reminded —I'm satisfied that if you had a jury trial, the jury may very well have given you much more than that.

I'm reminded of Judge Collinson, and he has so frequently said that you did save the State a considerable expense of trial, and you have confessed, so to speak, and admitted that you did this. And that's one of the reasons why I'm sentencing you to a little lesser term than I believe you would be sentenced to if you did—if you had had a jury trial. I believe it was fifteen to twenty years, so I feel like I'm giving you a break of ten years.

Now, the reason I'm giving you ten years and not three or four years, as suggested by your lawyer is because, Mr. Zamorano, you have been convicted in the past. You're not a first-time offender. And, although it was in 1981, the whole purpose of our criminal justice system is to make some effort to prevent people from repeating criminal activity. And, apparently, your experience back in 1981, that five-year sentence, did not teach you to refrain from criminal activity."

\* \* \* \* \* \*

Before the sentencing hearing was adjourned, the defendant was sworn and questioned by the trial court as follows:

\* \* \* \* \* \*

"THE COURT: What is your name?

THE DEFENDANT: Charles A. Zamorano.

THE COURT: And you are the same Charles Zamorano that pled guilty to Count I, the felony of transportation of marijuana on September 2nd, 1988?

THE DEFENDANT: Yes, sir.

THE COURT: And are you the same Charles Zamorano that was sentenced to ten years on Count I and to five years on Count II, to run concurrently with Count I, just a few minutes ago?

THE DEFENDANT: Yes.

THE COURT: Is your Attorney, Bill Wendt?

THE DEFENDANT: Yes.

THE COURT: Has he represented you throughout the—all the proceedings in this case?

THE DEFENDANT: Yes.

THE COURT: And did he appear with you at the time you pleaded guilty on September 2nd?

THE DEFENDANT: Yes.

THE COURT: And did he appear with you just a few moments ago at sentencing?

THE DEFENDANT: Yes.

THE COURT: Do you have any—did you have enough time to discuss this case with Mr. Wendt before you pleaded guilty?

THE DEFENDANT: Yes.

THE COURT: Did your attorney do everything you asked him to do?

THE DEFENDANT: Yes, sir.

THE COURT: Did he do everything you asked him to do?

THE DEFENDANT: Yes, sir.

THE COURT: Did he do anything you told him not to do?

THE DEFENDANT: No.

THE COURT: Do you have any complaints about Mr. Wendt?

THE DEFENDANT: No.

THE COURT: Are you satisfied with his services?

THE DEFENDANT: Yes.

THE COURT: Is there anything you wish to tell me with regard—regarding Mr. Wendt's services?

THE DEFENDANT: No.

THE COURT: Court finds no probable cause of ineffective assistance of counsel exists."

\* \* \* \* \* \*

The defendant thereafter timely filed this post-conviction motion to vacate, set aside or correct the sentences he received. Several grounds for relief were alleged, but in this court the defendant has briefed only two points. The defendant's first point, as stated, is that his sentence is unlawful "because the trial judge used a conviction from Mexico in consideration of the sentence imposed on [defendant] and based the length of [defendant's] sentence on the Mexico [sic] conviction, and this was improper in that the Mexico [sic] conviction was obtained without counsel being provided to [defendant], was obtained by coercion and violence against [defendant] to procure a confession and involved activity not a crime in Missouri."

■ The fundamental weakness in this argument is that it is based on a pre-sentence investigation which has not been made a part of the record. The defendant had the burden of furnishing this court with a transcript containing all material necessary to determine the issues he has raised, and when that information is not included we cannot convict the motion court of error. *Chamberlain v. State*, 721 S.W.2d 139, 140 (Mo.App.1986); *Rainwater v. State*, 676 S.W.2d 310, 311 (Mo.App. 1984). We are asked to set aside two pleas of guilty because of information contained in a report which is not before us, and the defendant's assertion as to what we would find in the record is no substitute for the record itself. *Chamberlain v. State*, 721 S.W.2d at 140.

We have, ex gratia, considered the merits of the defendant's argument that the trial court enhanced his punishment on the basis of a foreign conviction which was uncounseled or otherwise unlawfully obtained. For our immediate purpose, it is sufficient to say that the United States has, by treaty, agreed to recognize Mexican convictions to the extent of taking custody of the offender and detaining him as if he had been convicted in a United States court. Indeed, the treaty and the legislation enacted to implement it purport to reserve to the courts of Mexico exclusive jurisdiction over proceedings to challenge, modify or set aside convictions obtained in Mexican courts. *Rosado v. Civiletti*, 621 F.2d 1179, 1193–94 (2d Cir.1980), *cert. denied*, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980). And, as noted in *Rosado*, 621 F.2d at 1193, criminal convictions imposed by foreign tribunals have served as predicates for enhanced sentences under state multi-offender statutes.

■ Nevertheless, the treaty recognizing Mexican convictions is neutral with respect to the collateral consequences to be accorded a foreign conviction, and criminal defendants have a right to challenge the foreign conviction if it is used as a predicate for enhanced sentencing under a state recidivist statute. *United States v. Fleishman*, 684 F.2d 1329, 1344–46 (9th Cir.1982), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). It has further been held, however, that if a foreign conviction is used to enhance punishment under a recidivist statute, the foreign conviction may only be challenged when three requirements are demonstrated: (1) that the prior conviction was invalid; (2) that the sentencing judge mistakenly believed the foreign conviction was valid, and (3) the defendant's sentence was *actually enhanced* because of the invalid conviction. *United States v. Fleishman*, 684 F.2d at 1346. Although the trial court indicated it was taking the defendant's prior criminal conduct into account in imposing sentence, it was specifically recited in the judgment and sentence that the defendant was not charged as a prior, persistent or class X offender. It was permissible for the trial court to consider the *fact* of defendant's prior criminal activity in imposing sentence, and the sentences imposed are not invalid because they were unlawfully enhanced. See *United States v. Fleishman*, 684 F.2d at 1346[35]; *McLarty v. State*, 536 S.W.2d 173, 175–76 (Mo.App.1976).

■ The defendant's second point is a repetitious statement of his first point couched in terms of ineffectiveness of counsel. Inasmuch as the trial court did not sentence the defendant as a recidivist and its judgment recites that fact, counsel was not ineffective because he did not object to improper enhancement of the defendant's punishment. This point is also without merit.

We have recited enough of the record to demonstrate that the trial court carefully complied with Rule 24.02 and that the defendant's pleas of guilty were voluntarily and intelligently entered. As indicated, we find the defendant's assignments of error to be without merit. The judgment is affirmed.

FLANIGAN, P.J., and MAUS, J., concur.

SHRUM, J., not participating because not a member of the court when cause was submitted.