**STATE of Missouri, Plaintiff–Respondent,**

v.

**Alva E. LUNDY, a/k/a Al Lundy, Defendant–Appellant.**

No. 17359.

Missouri Court of Appeals,
Southern District,
Division Two.

March 11, 1992.

Motion for Rehearing or Transfer
to Supreme Court Denied
April 1, 1992.

Application to Transfer Denied
June 2, 1992.

Richard D. Bender, Sherwood, Honecker & Bender, Springfield, K. Edwin Applegate, Bloomington, Ind., for defendant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

Defendant, Alva E. Lundy (Lundy), as a passenger in an automobile driven by Michael Layden Mantle, (Mantle), was charged with transportation, § 195.025, and possession of marijuana, § 195.020.[1] Mantle was likewise charged. In a separate case, Mantle's motion to suppress the evidence of marijuana found in the automobile was sustained by the trial court. That suppression was affirmed on the state's appeal. *State v. Mantle*, 779 S.W.2d 357

---

**1.** Citations are to RSMo 1986. Section 195.020 was repealed in 1989.

(Mo.App.1989). In this case, before a different trial judge, Lundy's motion to suppress that evidence was overruled. In a jury-waived trial, Lundy was found guilty of each charge. He was sentenced to imprisonment for five years on each conviction, the sentences to run concurrently. Lundy states two points on appeal attacking the admission in evidence of marijuana found in the trunk of the automobile. The following is a resume of the evidence presented in this case.

On December 9, 1988, Missouri State Highway Patrol Corporal Matt Brown observed a 1979 Lincoln eastbound on Interstate 44 traveling at 60 m.p.h. in an area where the speed limit was 55 m.p.h. He stopped the Lincoln because of that violation. He asked driver Mantle if he had a driver's license. Mantle said he had a driver's license issued by the state of Indiana, but that his wallet had been stolen in Arizona and he could not produce the license. Corporal Brown, through repeated computer checks, determined that no driver's license had been issued to Mantle by the state of Indiana.

Corporal Brown also asked Mantle who owned the automobile. Mantle said the automobile was owned by one Sherry Perra. When Brown asked Mantle if he had permission to use the automobile, Mantle looked to Lundy. Lundy then explained, "Sherry Perra is a friend of mine and she has loaned me the car to use. I have permission to use her car." Upon request, Lundy produced from the glove compartment an Arizona Certificate of Title which showed on its face the owner to be Sherry and Allesandro Perra. The reverse side had been signed by the Perras as Sellers, but the blank for the name of the transferee was not completed. It was an "open title". Corporal Brown observed that the automobile appeared to have been driven for some time and was dirty. The tires were brand-new. He noticed the automobile was sitting "heavily laden in the rear." While talking with the occupants, Brown saw lying on the front seat, cigarettes, a thermos bottle, a can of Right Guard and a can of Soft and Dry deodorant. He also saw in the glove compartment, when it was opened, a spray can of Lysol deodorant spray and a small container of Brut Cologne or some other type of Brut product.

Mantle told Corporal Brown they had driven a Cadillac from Indiana to Arizona. They stayed at a motel in a small town in Arizona. They were taking the Lincoln from Arizona to Indiana.

Lundy told Corporal Brown they stayed at his cousin's ranch in a mobile home or trailer. When asked again about possession of the automobile, Lundy said:

"Officer, I'll tell you the truth, my cousin owns this car and he's letting me buy it from him a little bit at a time. You see, I'm on a pension and I really can't afford to pay for it all at one time."

Corporal Brown placed Mantle under arrest. In the meantime, Missouri State Highway Patrol Trooper Jack McMullin had arrived at the scene to assist Corporal Brown. The officers tried to open the trunk with a key. At this juncture, Trooper McMullin leaned over and smelled at the seam near the lock on the trunk to see if he could detect an odor. He had received training and had considerable experience in recognizing the odor of marijuana. He did detect the odor of marijuana emanating from the trunk of the Lincoln.

The trunk of the Lincoln was then opened by the automatic release button in the glove compartment. The trunk contained nine plastic trash bags of marijuana which totaled 157.5 pounds in weight. The trash bags in the trunk were surrounded by deodorizers.

◼ Lundy's first point is the trial court erred in overruling his motion to suppress and admitting in evidence the marijuana found in the trunk of the Lincoln because of the doctrine of collateral estoppel. He argued to the trial court and argues to this court that *State v. Mantle*, supra, determined that such evidence was the product of an illegal search and seizure and that such determination was final. Therefore, he concludes, the state could not relitigate the issue of the admissibility of the seized marijuana.

He cites the leading case of *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). That case summarizes the doctrine of collateral estoppel applicable to criminal cases in the following language:

> " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the *same parties* in any future lawsuit. . . ." *Id.*, 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. (Emphasis added.)

That doctrine as so stated is recognized in Missouri. *State ex rel. Hines v. Sanders*, 803 S.W.2d 649 (Mo.App.1991).

However, that doctrine as so stated does not support Lundy's point. The parties to *State v. Mantle* were the State of Missouri and Michael Layden Mantle. Lundy was not a party to that proceeding and would not be bound by the result of that proceeding had it been determined the marijuana was admissible.

Historically, mutuality of parties was an essential element of the doctrine of collateral estoppel. That requirement has been relaxed, but not wholly disregarded, in civil litigation. See *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713 (Mo. banc 1979). That trend in civil litigation was noted in *State v. Pippenger*, 741 S.W.2d 710 (Mo. App.1987).

The requirement of mutuality of parties does not offend the Fifth Amendment which is the basis for the applicability of the doctrine of collateral estoppel in criminal cases. See *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). The reasons to retain the requirement of mutuality of parties in criminal cases are many and varied. They are discussed in cases such as *Standefer*, supra, and *State v. Hall*, 687 S.W.2d 924, 929–931 (Mo.App.1985), concurring opinion of Judge Clark. The ultimate reason has been succinctly stated in a Colorado decision which provides an excellent analysis of the doctrine.

> "Criminal cases also involve a consideration wholly absent in civil cases—the important state interest in enforcement of the criminal law. We are persuaded that this interest outweighs the concerns for crowded court dockets and consistency of verdicts—two important considerations favoring the use of collateral estoppel." *People v. Allee*, 740 P.2d 1, 9 (Colo.1987).

The status of the doctrine in criminal cases has been succinctly summarized.

> " '. . . Traditionally, collateral estoppel has been limited by, *inter alia,* the rule of mutuality; that is, *collateral estoppel does not operate unless the party seeking to take advantage of it would have been likewise bound by an adverse judgment in the prior adjudication.* In the context of civil litigation, this mutuality requirement has been eroded in recent years and the modern trend has been for courts to abandon it. . . . *In the context of criminal litigation, however, the concept of mutuality has retained its vitality. Collateral estoppel has generally been applied only in those criminal cases involving defendants who were parties to the prior adjudication. . . .* ' " *State v. Swearingin*, 564 S.W.2d 351, 354–355 (Mo.App.1978), citing *Commonwealth v. Brown*, 473 Pa. 458, 375 A.2d 331, 334 (1977). (Emphasis in original.)

Also see Annot., *Res Judicata—Criminal Cases*, 9 A.L.R.3d 203 (1966).

■ The courts of this state have consistently held that the doctrine of collateral estoppel will be applied in criminal cases only when the same person is the defendant. *State v. Bradley*, 361 Mo. 267, 234 S.W.2d 556 (1950); *State v. Couch*, 341 Mo. 1239, 111 S.W.2d 147 (1937); *State v. Hall*, supra; *State v. Swearingin*, supra; *State v. Fondren*, 810 S.W.2d 685 (Mo.App.1991). This court determines that such limitation is sound by reason of principle and precedent. Lundy's first point has no merit.

Lundy's second point is the trial court erred in overruling his motion to suppress and admitting in evidence the marijuana

found in the trunk of the Lincoln because the search of the Lincoln and seizure of the marijuana was conducted without a warrant and was without probable cause.

■ This case is one of a series of cases presented to this court involving a search for drugs of a vehicle stopped for a traffic offense on Interstate 44. *State v. Burkhardt*, 795 S.W.2d 399 (Mo. banc 1990); *State v. Childress*, 828 S.W.2d 935 (Mo. App.S.D.1992); *State v. Purlee*, slip op. No. 17716, 1992 WL 27843 (Mo.App.S.D. February 18, 1992); *State v. Dixon*, 809 S.W.2d 116 (Mo.App.1991); *State v. Villa–Perez*, Nos. 16656 and 17090 (Mo.App.S.D. July 22, 1991), transferred to Missouri Supreme Court September 11, 1991; *State v. Hyland*, No. 17131, 1991 WL 238599 (Mo.App. S.D. November 18, 1991), transferred to Missouri Supreme Court January 28, 1992; *Raaf v. State*, 793 S.W.2d 211 (Mo.App. 1990); *Zamorano v. State*, 793 S.W.2d 894 (Mo.App.1990); *State v. Robinson*, 789 S.W.2d 876 (Mo.App.1990); *State v. Ingleright*, 787 S.W.2d 826 (Mo.App.1990). The validity of Lundy's second point is governed by the principles announced in the controlling authority of *State v. Burkhardt*, supra, and *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

"A search of an automobile on the highways pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile is a well established exception to the Fourth Amendment warrant requirement.... Probable cause may arise when the facts and circumstances within the knowledge of the seizing officer are sufficient in themselves to produce in a man of reasonable caution a belief that the contents of the automobile offend the law...." *State v. Burkhardt*, 795 S.W.2d at 404.

The circumstances of this case are substantially similar to the circumstances found to establish probable cause in *Burkhardt*.

Interstate 44 is a well-known route for the transportation of illegal drugs. The Lincoln sat "heavily laden in the rear." It was well-worn and dirty, but had new tires. The occupants had at hand three different deodorant devices. Mantle and Lundy told contradicting stories concerning their trip and the ownership of the vehicle. Trooper McMullin, who had extensive training and expertise in detecting the odor of marijuana, testified the odor of marijuana emanated from the trunk of the Lincoln. The trial court did not find this incredible.

Within the principles delineated in *Burkhardt* and the other cases cited, these circumstances establish a basis for probable cause to search the Lincoln for drugs. Lundy's second point is denied. The judgment is affirmed.

SHRUM, P.J., and MONTGOMERY, J., concur.